Thomson, P. J.
On the 8th day of February, 1897, F. S. Goldsmith and Fanny Goldsmith entered into a contract in writing with Samuel Newhouse, as trustee, by the terms of which, in consideration of the payment by Newhouse of the cost of sinking a shaft on certain mining property, the title to one-fourth of which was in the Goldsmiths, and of the remaining three-fourths in other parties, with whom the Goldsmiths claimed to have agreements authorizing such contract, they gave him the exclusive right to purchase the property on certain terms named in the contract. Afterwards, on the 15th day of March, 1897, another contract was executed between the same parties, in which, after recitals that Newhouse was about to pay a portion of the cost of sinking the shaft,' and that a question had arisen whether the outside owners were bound by the contract of February 8, the Goldsmiths agreed to procure and deliver, on or before April 12, 1897, to Mr. Newhouse, the written approval and assent of those outside owners to the contract of February 8, and stipulated that in the event of their failure to procure such approval and assent, Newhouse should not be liable for the cost of sinking the shaft, and should have a lien on the property for all moneys paid out by him pursuant to the terms of that contract.
Afterwards, on the 22d day of April, 1897, the Goldsmiths executed and delivered to Newhouse a certain instrument by which, after recital of the terms and conditions of the two contracts of Febru *3 ary 8 and March 15, and of the default of the Goldsmiths in procuring the approval of those contracts hy the other owners of the property, the property was conveyed to Newhouse to secure the repayment of the moneys expended by him pursuant to the contract of February 8, and authority given to him to foreclose the lien if such money should not be repaid on or before, the first of June, 1897, or if the parties should not reach some new understanding or agreement before that time. This action was brought on the 10th day of August, 1897, for the foreclosure of the mortgage. The complaint alleged that no part of the moneys advanced by Newhouse had been repaid, and that no new understanding or agreement in the premises had been reached by the parties. The answer averred that when the mortgage was executed the plaintiff still claimed the benefit of the option of February 8, and the Goldsmiths expected to procure the approval of the other owners ; that, therefore, the clause looking to a new understanding or agreement between the parties, and the clause giving the Goldsmiths time until June 1 for the repayment, were inserted in the mortgage; and that before that time, the parties did come to a new understanding or agreement in this, that on'the 10th day of May, 1897, the defendants did procure and deliver to the plaintiff the formal written approval and assent of the other owners to the contract of February 8 and their agreement to be bound thereby, and that such approval and agreement was accepted by the plaintiff. These averments were denied by the replication. The court rendered a decree in accordance with the prayer of the complaint, and the defendants appealed.
The defendants rely for a reversal of the Judgment upon two alleged errors; namely, that' the finding of the court was against the preponderance of *4 the evidence and the weight of the testimony; and that the court allowed a witness for the plaintiff to testify without any questions being propounded to him. • We are precluded from a consideration of the question whether the evidence warranted the findings, -because no exception was preserved to the decree. Without such exception it cannot be reviewed on the evidence. It is true that the order allowing the appeal recites an exception, but the recital is no evidence that an exception was taken. Exceptions are made part of the record only by bill of exceptions, allowed, signed and sealed by the judge who presided at the trial. — Patrick v. Weston, 21 Colo. 73; Colo. Fuel Co. v. Maxwell Land Grant Co., 22. Colo. 71; Burnell v. Wachtel, 4 Colo. App. 556.
But while the condition of the record will not permit an inquiry into the sufficiency of the evidence to sustain the judgment, the question whether, in the admission of evidence, such error was committed as to work prejudice to the rights of the defendants, may propérly be considered. The contract of February 8 was executed in triplicate. One copy was delivered to the defendants, and the other two retained by the plaintiff. The defendants produced the paper which had been delivered to them, on the back of which was an indorsement approving and ratifying the contract, and signed by the other owners of the property; and then offered the contract and indorsement in evidence. The contract appeared to have been materially altered by the erasure of an important stipulation which it contained. The introduction of the documents was resisted on the ground of the alteration, and testimony was introduced on the question when and by whom it was made. A determination of this question was important, because if the alteration was unauthorized *5 by the plaintiff, the contact which was approved was not the contract made by the parties. The two copies retained by the plaintiff showed no erasure. The defendants produced evidence tending to show that this erasure was made before the contracts were signed, and the' plaintiff furnished evidence tending to show that when the defendants’ copy was delivered to them it was unaltered. In this condition of the evidence Mr. C. C. Parsons, who had acted for the plaintiff in the preparation óf the contracts and had executed them for the plaintiff as his attorney in fact, and who was the sole attorney for the plaintiff at the trial, caused himself to be sworn as a witness and offered a statement on the question of the erasure. Objection to the proposed statement, unless it was given in ánswer to questions by an attorney provided for the purpose, being overruled, Mr. Parsons testified that when he signed the name of the plaintiff to the several papers he looked them over carefully, and this erasure was not in any of them. The objection made to Mr. Parsons’ statement at the time it was offered is insisted on here. The objection is not that by reason of his relations to the plaintiff he was not a competent witness, but that he could not give his testimony in a narrative form. Counsel have referred us to no authority holding that it is error to permit a witness to so testify. Where the testimony is given in answer to questions, objections may be interposed as the examination proceeds, and counsel thus perhaps be subjected to less inconvenience than where the witness tells his story in the form of a narration; but' by the latter mode counsel is not deprived of the right or opportunity to object to improper testimony; and to allow witnesses to proceed in that manner is within the discretion of the.court. — R. R. Co. v. Charless, 51 Fed. 562; Clark v. Field, 42 Mich. 342.
*6 We do not think it was error to permit Mr. Parsons to make his statement without being interrogated; but even if it was, the error was entirely harmless. He had but a few words to say; his statement related' to a single subject; questions could easily have been framed to which successful objection could not have been made and which would have brought out exactly the same testimony; so that by compelling the witness to submit to an examination by another attorney the defendants would have gained nothing.
The judgment should be affirmed.

Affirmed.