Hurlbut, J.
Action by appellee (plaintiff below) against appellant (defendant) to recover judgment in tlie sum of $1,000.00 for commission alleged to be earned in *64 finding one willing to exchange real property in Denver for defendant’s farm near Fort Collins.
The complaint alleged that during the month of December, 1907, defendant employed plaintiff to procure for him an exchange of certain real estate owned by him and known as the Sholine Farm, for improved city property, and promised to pay him $1,000.00 for so doing; that in pursuance of said employment plaintiff procured for defendant an exchange of the said Sholine Farm for lots 11 and 12, block 153, Stiles Addition to Denver, with one H. E. Don Carlos, and. that said Don Carlos, by his agent, George E. Ehrenkrook, and defendant contracted to make said exchange in words and 'figures following, to-wit:
“Denver, Colo., Jan. 2, 1908. For and in consideration of $1.00 to me in hand paid, I will give and trade my farm containing 665 acres more or less, known as the Sholine Farm, together with all water rights, laterals, ditches, reservoirs and water contracts of whatever nature together with all improvements thereon, subject to an incumbrance of $11,000.00 at 7 per cent., about three miles north of Fort Collins in Larimer Co., Coto., for the apartment building in Denver, Colo., upon lots numbered 11 and 12, in block numbered 153, Stiles Add. to Denver, subject to incumbrances of $15,000.00 at 6 per cent. It is' agreed that each party pay their taxes up to the first of Jan., 1908. Abstracts to be furnished and warranty deeds to be executed by each. Deal to be closed on or before Feb. 1, 1908, at 419 Colorado Bldg., Denver, Colo.
$12,000.00 at 6 per cent, due May 9, 1910, can be paid off by paying 3 months’ interest in advance.
*65 $3,000.D0 at 6 per cent, due May 9, 1910, on or before any part.
(Signed)
HANS M. SHOLINE,
CHRISTINA SHOLINE,
GEORGE B. EHRENKROOK,
Agt.”
Defendant answered, admitting execution of tbe contract of January 2nd, but alleges that it was further understood between the parties thereto that the property therein described should be a good merchantable title, and denies the other allegations of the complaint;'and as a second defense sets out that plaintiff and defendant entered into an agreement for the exchange of the property, but claims that the exchange should be entirely satisfactory to defendant and his wife, Christina Sholine, and that plaintiff was not to receive the thousand dollars unless the exchange was satisfactory as stated, and further alleges that at the time the contract was signed representations were made by Ehrenkrook that an incumbrance of $15,000.00 then existed on the Denver property; and further that his attorney informed him that the title to the Denver property was not a good merchantable title; that there was a mortgage of only $12,000.00 on the property, and that he afterwards ascertained from plaintiff and Ehrenkrook that the additional $3,000.00 was to be placed thereon at the time of the consummation of the deal, and alleges on information and belief that the latter sum was to be divided between plaintiff and Ehrenkrook; that on account of the misrepre.sentations concerning the amount of the incumbrance and the alleged fraud defendant refused to com *66 píete or consummate the exchange according to the contract. Plaintiff filed a reply denying all allegations of new matter set up in the answer. The jury found the issues in favor of plaintiff and returned a verdict of $1,000.00 upon which judgment was entered and the case is here for consideration.
All the issues made by the pleadings were sharply contested at the trial and unless the record shows error in the giving or refusing of instructions by the court or the admission or rejection of testimony or proofs, this court is concluded by the verdict of the jury, under the well established rule that the verdict of a jury based upon controverted facts will not be disturbed as contrary to the evidence.
We have carefully examined appellant’s brief as to his objections concerning the admission and rejection of testimony by the court, to which exceptions were duly reserved, but we fail to find any error in the rulings of the court in that behalf.
Appellant contends that the refusal of the court to give the following instruction was prejudicial to him and that the same was réversible error, to-wit:
“The jury are instructed that if you find and believe from the evidence that the agreement between plaintiff and the defendant concerning the commission of the plaintiff was that the defendant and his wife, Mrs. Sholine, were to be fully and entirely satisfied with the trade in question at all times prior to the final closing thereof, and that the payment of the commission of the plaintiff depended thereon, and you further find that this defendant and his wife, Mrs. Sholine, were dissatisfied, and for that reason refused to carry out and consummate *67 the transfer in question, then you must find for the defendant. ”
From the view we take of the issues we do hot think the court erred in excluding this instruction. The evidence clearly shows that the defendant Sholine had the contract in his possession for several days, thinking it over, before he signed it. In his direct examination he testified: “It was shortly after the second of January, 1908, that I signed it. There was several days I was studying about this. I did not sign it the day it was made. I kept it in my possession several days before I signed it.” And again on cross-examination: “I carried it three or four days to think it over, and then signed it and signed my wife’s name to it, and then I went to Judge Ballard’s office and asked him to draw a deed to these people. * * * I studied the contract three or four days before I signed it.” Defendant ’s wife, on the witness stand, testified: ‘ ‘ The first time I looked at this property my husband and I went dawn with Mr. Harris. * * * We looked it over and. subsequently I went down myself and looked it over, again, * * * came back and reported to my husband what I had seen. My husband signed the agreement afterwards. * * * went down again to the office of Mr. McCrimmon and Ehrenkrook to see the abstract with my husband. We were to close deal but the abstract was not ready. Mr. Harris told us not to sign notes until we had examined the abstract.”
The testimony also shows without contradiction that prior to the signing of the contract defendant and his wife visited the property in question a number of times, examined the premises, and called for *68 and received a full statement as to who were the tenants and what amount of revenue per month the property was yielding from rentals. Both defendant and his wife appear to have taken all the time they desired to examine the Denver property and to decide as to whether or not they would make the exchange, after which they deliberately signed the contract. Under these circumstances, in the absence of fraud or mistake, defendant should be held to his contract. Plaintiff’s commission was due and payable when this contract was formally signed, unless it appears that the Denver property lacked a good and merchantable title, or some other defect of like import existed. After having had every opportunity to study the matter over and to examine minutely into the physical condition of the property as well as its rentals and revenues before signing the contract, neither defendant nor his wife should be heard to say thereafter that they were not satisfied with the exchange so far as plaintiff is concerned. About the only reason we can discover why defendant failed to carry out the contract of exchange was a vague belief on his part that' there was something crooked about the deal. But on the witness stand he failed to show upon what grounds such belief was founded. He testified that the reason he did not make the exchange under the contract was his discovery of a lien of $12,000.00 on the Denver property instead of $15,000.00, misrepresentations made by Ehrenbrook to the effect that there was an incumbrance at the time of $15,000.00 on the property, and that his attorney told him the title was clouded and not merchantable. He did not claim that he refused to carry out the contract be *69 cause tlie title to tlie property was defective, and even if tlie answer sufficiently pleaded that defense, there is not a particle of testimony to sustain it. The testimony of the witness Ballard (defendant’s attorney at the time of the transaction), does not amount to legal proof of defective title of the Denver property. Under the evidence the court was clearly justified in excluding the instruction from the jury.
The objections urged to the instructions given, fail, in our judgment, to point out any serious or reversible error in the giving thereof. The instructions taken as a whole seem to fairly present the case to the jury.
Instruction No. 3 reads as follows:
“Notwithstanding the contract calls for an incumbrance of $15,000.00 payable as provided therein, still it was in the power of the parties to waive strict performance of said contract and to agree upon a shorter time or different one for the payment of the $3,000.00, and if you find that they did afterwards so waive and consent to a different payment, that would make no difference as to the plaintiff’s right to recover if he is otherwise entitled to a verdict.”
The objections urged to the giving of this instruction by the court are not tenable. The contract itself provided that an incumbrance was to be upon the Denver property of $15,000.00, and contained a statement as to how it could be paid, to-wit, $12,000.00 at 6% could be paid off entire at any time by paying three months’ interest in advance; $3,000.00 thereof at 6% “on or before any part.” This last phrase is ambiguous and not easily un *70 derstood. We presume it was meant that any part of that amount could be paid before due. The instruction properly stated the law whenit recited that the parties to the contract could subsequently waive strict performance of the same and agree upon different terms than those expressed therein. This is a statement of a well-known legal proposition.
Plaintiff also objects to that part of the instruction which reads, “If you find that they did afterwards so waive,” etc., without inserting after the word “find” the phrase “from the evidence.” We discover no serious error in this omission. We think the following excerpt from Gorman v. People, 17 Colo., 596, is applicable to the point raised, viz.: “We are not to be understood as holding that it is necessary in every instruction to say to the jury that they must believe ‘from the evidence,’ but the charge when considered as a whole, ought to be so clear in this respect that intelligent men will have this principal of law clearly before them when deliberating upon a verdict, particularly in criminal cases. It. is doubtful, however, if this judgment should be reversed solely on account of such an omission in the charge. Jurors generally understand that they are to decide all cases solely upon the evidence introduced at the trial,” etc.
The first instruction given by the court informs the jury that “if they find and believe from a preponderance of the evidence that plaintiff employed Harris, ’ ’ etc. It may be also remembered that when a juror is examined on his voir dire he is generally asked if he will render a verdict based solely upon the evidence produced at the trial and the law as given by the court. This fact, as well as the form *71 of the oath, administered when sworn as a juror, would indicate that a juror fully understands his duty in that respect, and that his deliberations and findings should be based wholly upon the testimony adduced on the witness stand.
Counsel also contend that the evidence of the witness Ballard was not competent testimony in this case, and reversible error was committed by the court in admitting the same against defendant’s objections. It is admitted that at the time the contract was signed he was acting as attorney for defendant, but appeared at the trial as attorney for plaintiff. Our attention is cited to sec. 7274, Revised Statutes, 1908, a part of which reads as follows: “An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional employment.” The purpose of this statute is to protect the client against publicity as to admissions or statements made by him to his attorney while the relation of client and attorney exists between them, and is undoubtedly for the benefit of the client. However, when the client sees fit to voluntarily appear in a court of justice and testify under oath as to such statements or admissions, there is no longer any.reason for the application of the rule, and we believe it is the universal practice, when such a situation exists, to permit the attorney to be examined fully in relation thereto. Our supreme court seems to have approved of such practice. We extract the following excerpt from Fearnley v. Fearnley, 44 Colo., 417, viz.: “The object of the statute is to extend to the client the privilege that his communication shall *72 not be disclosed without his consent. It is a personal privilege and if he makes the disclosure himself it ceases to be a secret. The defendant testified to what transpired between her husband, Mr. Dunklee, (her attorney) and herself. By so doing she made it public, and thereby waived her right to object to Mr. Dunklee giving his own account of the matter. Hunt v. Blackburn, 128 U. S., 464; State v. Madigan, 66 Minn., 10.”
Another question raised by appellant remains to be considered, and that is as to the propriety of an attorney, who is conducting the case for one party to an action, testifying as a witness in such case. This was not error. Goldsmith et al. v. Newhouse, Trustee, 19 Colo. App., 1. In this case the interrogation of the witness Ballard, having been directed only to an explanation of a matter previously testified to by his former client, suggests to our mind no reversible error.
In addition to what has heretofore been said, this record appears to show fair and honorable action throughout on the part of plaintiff in his dealings with defendant. In fact he seems to have placed his desire to have defendant treated fairly in the exchange of his property above that of obtaining commissions for his services in the premises. Defendant’s wife testified that plaintiff advised herself and husband not to sign the notes (being part of the transaction of exchange) until they had first caused the abstract of title to the Denver property to be examined.
Failing to discover any reversible ■ error in the record, the judgment will be affirmed.

Judgment affirmed.