

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-1994

# Rhone-Poulenc Rorer, Inc., et al. v. Home Indemnity Co., et al.

Precedential or Non-Precedential:

Docket 93-1962 and 93-1975

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Rhone-Poulenc Rorer, Inc., et al. v. Home Indemnity Co., et al." (1994). *1994 Decisions.* Paper 114.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/114

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 93-1962 and 93-1975
_____

RHÔNE-POULENC RORER INC. and
ARMOUR PHARMACEUTICAL COMPANY,

Petitioners,

v.

THE HOME INDEMNITY COMPANY,
a New Hampshire corporation,

v.

AETNA CASUALTY & SURETY INSURANCE; AIU
INSURANCE COMPANY; AMERICAN CENTENNIAL
INSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE
COMPANY; FIRST STATE INSURANCE COMPANY; GRANITE
STATE INSURANCE COMPANY; HARTFORD INSURANCE
COMPANY; INSCO LIMITED; INSURANCE COMPANY OF
PENNSYLVANIA; LEXINGTON INSURANCE COMPANY;
MANHATTAN FIRE & MARINE INSURANCE COMPANY;
MOTOR VEHICLE CASUALTY COMPANY; OLD REPUBLIC
INSURANCE COMPANY; PANTRY PRIDE INC; PROMETHEAN
INSURANCE LTD.; PRUDENTIAL REINSURANCE COMPANY;
PURITAN INSURANCE COMPANY; REVLON INC; TWIN
CITY INSURANCE COMPANY; LONDON MARKET CO.;
JOHN BARRINGTON HUME, AS REPRESENTATIVE OF
UNDERWRITERS AT LLOYDS; INSURANCE COMPANY
OF NORTH AMERICA; NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PENNSYLVANIA; ALL CITY
INSURANCE COMPANY; EMPLOYER'S MUTUAL CASUALTY;
GIBRALAR CASUALTY COMPANY; LANDMARK INSURANCE
COMPANY; NEW ENGLAND INSURANCE COMPANY; ROYAL
INSURANCE COMPANY; REPUBLIC INSURANCE COMPANY;
INTERNATIONAL INSURANCE COMPANY; PACIFIC
INSURANCE COMPANY LTD; ATLANTA INTERNATIONAL
INSURANCE COMPANY; CENTURY INDEMNITY COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY; TRANSPORT
INSURANCE COMPANY;  MIDLAND INSURANCE COMPANY;
INTEGRITY INSURANCE COMPANY; UNION INDEMNITY
INSURANCE; TRANSIT CASUALTY COMPANY; CITY
INSURANCE COMPANY; DRAKE INSURANCE COMPANY;
EXCESS INSURANCE COMPANY; HOME INSURANCE
COMPANY; PACIFIC EMPLOYER'S INSURANCE COMPANY;

ROYAL INDEMNITY COMPANY; ZURICH INTERNATIONAL INSURANCE COMPANY; HENRIJEAN; ILLINOIS NATIONAL INSURANCE COMPANY; NORTH STAR REINSURANCE COMPANY; and NATIONAL CASUALTY INSURANCE COMPANY,

Respondents,

and

THE HONORABLE JAMES McGIRR KELLY, UNITED STATES DISTRICT JUDGE FOR THE EASTERN DISTRICT OF PENNSYLVANIA,

Nominal Respondent

MORGAN, LEWIS & BOCKIUS; REED SMITH SHAW & McCLAY; SHANLEY & FISHER, P.C.; HUGHES HUBBARD & REED; MONTGOMERY McCRACKEN WALKER & RHOADS; SKADDEN ARPS SLATE MEAGHER & FLOM; and COOPERS & LYBRAND,

Intervenors in support of Petitioners.

_____

RHÔNE–POULENC RORER INC. and ARMOUR PHARMACEUTICAL COMPANY,

Appellants,

v.

THE HOME INDEMNITY COMPANY, a New Hampshire corporation,

v.

AETNA CASUALTY & SURETY INSURANCE; AIU INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE COMPANY; TRANSPORTATION INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; HARTFORD INSURANCE COMPANY; ILLINOIS NATIONAL INSURANCE CO.; INSCO, LTD; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; LEXINGTON INSURANCE COMPANY; MANHATTAN FIRE & MARINE INSURANCE COMPANY; MOTOR VEHICLE CASUALTY COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA;

NEW ENGLAND REINSURANCE COMPANY; NEW HAMPSHIRE INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; PANTRY PRIDE, INC.; PROMETHEAN INSURANCE, LTD.; PRUDENTIAL REINSURANCE COMPANY; PURITAN INSURANCE COMPANY; REVLON, INC; TWIN CITY INSURANCE COMPANY; THE LONDON MARKET COMPANIES; and JOHN BARRINGTON HUME A REPRESENTATIVE OF UNDERWRITERS AT LLOYDS OF LONDON;

and

REVLON, INC.;

v.

CITY INSURANCE COMPANY; DRAKE INSURANCE COMPANY; EXCESS INSURANCE COMPANY; HENRIJEAN; THE HOME INSURANCE COMPANY; PACIFIC EMPLOYER'S INSURANCE COMPANY; ROYAL INDEMNITY COMPANY; ZURICH INTERNATIONAL INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PA; ALL CITY INSURANCE COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; GIBRALTER CASUALTY COMPANY; LANDMARK INSURANCE COMPANY; NEW ENGLAND INSURANCE COMPANY; ROYAL INSURANCE COMPANY; REPUBLIC INSURANCE COMPANY; INTERNATIONAL INSURANCE COMPANY; PACIFIC INSURANCE COMPANY, LTD.; ATLANTA INTERNATIONAL INSURANCE CO.; CENTURY INDEMNITY COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; TRANSPORTION INSURANCE COMPANY; MIDLAND INSURANCE COMPANY; PACIFIC INSURANCE COMPANY LTD.; ATLANTA INSURANCE COMPANY LTD.; CENTURY INDEMNITY COMPANY; LIBERTY MUTUAL INSURANCE; MIDLAND INSURANCE COMPANY; INTEGRITY INSURANCE COMPANY; UNION INDEMNITY INSURANCE COMPANY; TRANSIT CASUALTY COMPANY; ROYAL INSURANCE COMPANY; ROYAL INDEMNITY COMPANY; NEW ENGLAND INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; NORTH STAR REINSURANCE COMPANY; and NATIONAL CASUALTY INSURANCE COMPANY,

Appellees,

MORGAN, LEWIS & BOCKIUS; REED SMITH SHAW & McCLAY; SHANLEY & FISHER, P.C.; HUGHES HUBBARD

                & REED; MONTGOMERY McCRACKEN WALKER & RHOADS;
        SKADDEN ARPS SLATE MEAGHER & FLOM; and COOPERS & LYBRAND,

                                Intervenors-appellants.

                        _____

                ON APPEAL FROM THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                            (D.C. Civ. No. 88-9752)
                        _____

                        Argued March 10, 1994

                Before:  MANSMANN, LEWIS, Circuit Judges

                            McKELVIE, District Judge*
                        _____

                        (Filed  August 17, 1994)
                        _____


        *Hon. Roderick R. McKelvie, United States District Judge for the
        District of Delaware, sitting by designation

STEPHEN J. MATHES (Argued)
WILLIAM R. HERMAN
Hoyle, Morris & Kerr
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

     Attorneys for Appellants/Petitioners Rhône-
     Poulenc Rorer Inc. and Armour Pharmaceutical
     Company

JEFFREY B. ALBERT
Fox, Rothschild, O'Brien & Frankel
2000 Market Street
10th Floor
Philadelphia, PA 19103

JAMES W. CHRISTIE
Christie, Pabarue, Mortensen and Young
1880 JFK Boulevard
10th Floor
Philadelphia, PA 19103

ROY L. REARDON
JAMES P. BARRETT
ROBERT F. CUSUMANO (Argued)
DAVID J. WOLL
KEVIN G. LAURI
Simpson, Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

     Attorneys for Appellee/Respondent The Home
     Indemnity Company

H. MARC TEPPER
Margolis, Edelstein & Scherlis
Sixth and Walnut Streets
The Curtis Center, 4th Floor
Philadelphia, PA 19106

Attorney for Appellees/Respondents AIU
Insurance Company, Birmingham Fire Insurance,
Granite State Insurance Company, Illinois
National Insurance Company, Lexington Insurance
Company, National Union Fire Insurance Company of
Pittsburgh, Pennsylvania, New Hampshire Insurance
Company and Landmark Insurance Company

JOSEPH M. OBERLIES
Connor & Weber
2401 Pennsylvania Avenue
Suite 1C-47
Philadelphia, PA 19130

Attorney for Appellee/Respondent American
Centennial Insurance Company

RICHARD B. MARRIN
Ford, Marrin, Esposito & Witmeyer
88 Pine Street
Wall Street Plaza, 23rd Floor
New York, NY 10005

WILLIAM G. SCARBOROUGH
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
Philadelphia, PA 19103

Attorneys for Appellee/Respondent Transport
Insurance Company

E. DOUGLAS SEDERHOLM (Argued)
RICHARD J. BORTNICK
White and Williams
One Liberty Place
Suite 1800
1650 Market Street
Philadelphia, PA 19103

Attorneys for Appellees/Respondents Pacific
Employers Insurance Company, Century
Indemnity Company and Insurance Company of
North America

WALTER A. STEWART
Manta & Welge
2005 Market Street
One Commerce Square
37th Floor
Philadelphia, PA 19103

Attorney for Appellees/Respondents Liberty Mutual Insurance Company, Liberty Mutual Insurance and Royal Indemnity Company

EDWARD M. DUNHAM, JR.
Miller, Dunham, Doering & Munson
1515 Market Street
13th Floor
Philadelphia, PA 19102

Attorney for Appellee/Respondent Aetna Casualty & Surety Company

SUSAN M. DANIELSKI
Cozen & O'Connor
The Atrium
1900 Market Street
Philadelphia, PA 19103

Attorney for Appellees/Respondents Pantry Pride Inc. and Revlon Inc.

THOMAS C. DELORENZO
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

Attorney for Appellees/Respondents Prudential Reinsurance Company and Gibraltar Casualty Company

DAVID F. ABERNETHY
Drinker, Biddle & Reath
1345 Chestnut Street
Philadelphia National Bank Building
Philadelphia, PA 19107-3496

        Attorney for Appellee/Respondent
International Insurance              Company

RONALD P. SCHILLER
Piper & Marbury
Two Penn Center Plaza
Suite 1500
Philadelphia, PA 19102

        Attorney for Appellee/Respondent North Star
Reinsurance                 Company

THOMAS M. KITTREDGE (Argued)
Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, PA 19103

        Attorney for  Intervenor Morgan, Lewis &
Bokius

KERRY A. KEARNEY
Reed Smith Shaw & McClay
Mellon Square
435 Sixth Avenue
Pittsburgh, PA 15219

        Attorney for  Intervenor Reed Smith Shaw &
McClay

RAYMOND M. TIERNEY, JR.
SUSAN SHARKO
Shanley & Fisher
131 Madison Avenue
Morristown, NJ 07962

        Attorneys for Intervenor Shanley & Fisher

        JEFF H. GALLOWAY
        Hughes, Hubbard & Reed
        One Battery Park Plaza
        New York, NY 10004

                Attorney for  Intervenor Hughes, Hubbard &
Reed


        JEREMY D. MISHKIN
        Montgomery, McCracken, Walker & Rhoads
        Three Parkway, 20th Floor
        Philadelphia, PA 19103

                Attorney for Intervenor Montgomery,
                McCracken, Walker & Rhoads

        ED YODOWITZ
        Skadden, Arps, Slate, Meagher & Flom
        919 Third Avenue
        New York, NY 10022

                Attorney for  Intervenor Skadden, Arps,
                Slate, Meagher & Flom

        MATTHEW J. BRODERICK
        Dechert Price & Rhoads
        4000 Bell Atlantic Tower
        1717 Arch Street
        Philadelphia, PA 19103

                Attorney for Intervenor Coopers & Lybrand

McKELVIE, District Judge.


     In this insurance coverage case, the district court has

ordered the insureds, their attorneys and their accountants to

produce documents that would normally be protected from

disclosure by the attorney client privilege, by the accountant

client privilege, or as attorney work product.  The documents to

be produced were created before the insureds purchased coverage,

and contain evaluations of the insureds' potential liability to consumers of their products.

The district court found the information in the documents relevant to matters in issue in the action in that it may tend to show whether or not the insureds expected or intended the claims for which they seek coverage.  The court held the insureds had waived any right to maintain confidentiality of these documents by filing this action for coverage and by putting in issue the matter of their knowledge of facts relating to the claims.

The insureds have appealed from that order.  They have also filed a petition for a writ of mandamus directing the district court to vacate and reverse the order.  The six law firms and the accounting firm that have been subpoenaed to produce documents have moved to intervene and join in the insureds' requests for relief.

For the reasons set out below, we will grant the petitioners' request for relief and issue a writ of mandamus to the district court and direct it to vacate its order that these documents be produced.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     A.   The Parties and the Nature of the Proceedings

     Rhône-Poulenc Rorer Inc. is the successor to the Rorer Group Inc.  In the fall of 1985, soon after Pantry Pride, Inc. had acquired Revlon, Inc., Rorer entered into an agreement with Pantry Pride to purchase Revlon's ethical pharmaceutical businesses, including USV and Armour Pharmaceutical Company.  One of Armour's products was Factorate, a blood clotting product processed by Armour and sold principally for use by hemophiliacs.

     Rorer formally acquired Armour on January 7, 1986.  On April 21, 1986, Armour was named in the first of a series of lawsuits filed by individuals who claimed Factorate had infected them with the Human Immunodeficiency Virus (HIV), which is thought to be the cause of Acquired Immunodeficiency Syndrome (AIDS).  To date, Armour has been joined as a defendant in more than two hundred AIDS-related cases.

     Rorer had purchased a general liability insurance policy from The Home Indemnity Company on December 31, 1985, and looked to it for coverage for the claims against Armour.  In addition, it sought coverage under a blanket excess policy it purchased from Pacific Employers Insurance Company on July 29, 1986.  Home denied coverage for these AIDS-related claims.

     In December of 1988, Rorer and Armour brought this suit in the United States District Court for the Eastern District of Pennsylvania.  In the complaint, they allege they are insureds under a primary comprehensive general liability insurance policy provided by The Home Indemnity Company.  They contend Home has

failed and refused to honor its obligations to defend and indemnify them from liability for the AIDS-related claims. They contend the district court has subject matter jurisdiction based on diversity of citizenship of the parties under 28 U.S.C. § 1332. Rhône-Poulenc and Armour seek, among other things, a declaration that Home accepted coverage for these claims.

Home answered the complaint by denying that Rhône-Poulenc Rorer and Armour are entitled to the relief sought. In addition, it has asserted a number of affirmative defenses and has filed a counterclaim for a declaration that it does not owe a duty to indemnify or defend the plaintiffs for the claims identified in the complaint. Home has also filed a third party complaint against Pantry Pride, Inc., Revlon, Inc. and a number of insurance companies, including Pacific Employers Insurance Company. Certain of the third-party defendant insurers have filed fourth-party complaints against other insurers.

One of Home and Pacific Employers' affirmative defenses is that the claims identified in the complaint are excluded from coverage because they do not result from "occurrences." The insurers agreed to indemnify and defend against claims relating to bodily injury that is caused by an occurrence. An occurrence is defined in the Home policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insureds." The insurers argue that the alleged transmission of HIV from Factorate was known when the insurance policies were purchased, that the resulting injuries

were not "neither expected nor intended," and that the resulting claims are not insured.

A second affirmative defense asserted by the insurers is that Rorer and Armour wrongfully obtained the coverage by intentionally failing to disclose their knowledge of the potential for these claims. A third defense is that Armour sold the products knowing that they would create an unreasonable risk of harm to others and that the resulting claims are, therefore, uninsurable.

B.    The Discovery Sought by Home and Pacific Employers

In connection with these defenses, Home and Pacific Employers have sought discovery from the plaintiffs on what information they may have had prior to purchasing the policies that would have suggested that Armour's products might transmit the HIV virus and that Armour would be subject to claims for injuries suffered as a result of transmitting that virus.

During a September, 1992 deposition, Robert E. Cawthorn, Rhône-Poulenc Rorer's chairman and chief executive officer, testified to the investigation and analysis undertaken by Rorer in connection with its decision to purchase Armour. Cawthorn testified that at the time Rorer was negotiating to purchase Armour he and others at Rorer were aware of reports in the press that blood products might have transmitted the AIDS virus and had sought and obtained advice from counsel with regard to liabilities for claims alleging damages for transmitting the virus. He testified:

We had got the advice of outside counsel on the potential legal liabilities in this area and had learned that blood products are not considered in most states as products, per se, and are not subject to the same liability laws as regular pharmaceutical products. We had learned that there was some precedence [sic] in terms of transmission of the hepatitis virus which these plasma products had transmitted to hemophiliacs. And that, in fact, my recollection is we were told that there had been no successful cases against the fractionaters [sic] and hepatitis because of the particular legal situation. And the opinion was that that should hold, also, for the AIDS virus.

After the deposition, Home and Pacific Employers moved for an order extending the time for completion of discovery and compelling Rhône-Poulenc and Armour to produce all evaluations of their potential liability for AIDS-related claims, including any documents confirming the advice described by Cawthorn. In response to the motion, Rhône-Poulenc and Armour produced copies of four documents, subject to an agreement with the insurers that the production would not waive any privilege with respect to any other communication.

The first of the four documents produced is the minutes of the November 26, 1985, meeting of the Board of Directors of Rorer Group Inc. During this meeting the Board considered the Armour acquisition. Those minutes show that John W. Eckman chaired the meeting, and that Cawthorn and Rorer's general counsel, Richard H. Lange, were present. Also present were representatives of the accounting firm of Coopers & Lybrand and the investment banking firm of First Boston Corporation, as were attorneys from the law

firms of Hughes, Hubbard & Reed; Skadden, Arps, Slate, Meagher & Flom; and Montgomery, McCracken, Walker & Rhoads.  The following summary is included in the minutes:

> In response to a question by Mr. Eckman concerning Armour's product liability exposure, Mr. Lange said that Armour's products are not regarded as drug products, with associated strict liability, and that it has been necessary to prove negligence by the manufacturer as a basis for liability.  In addition, many states have legislation limiting liability for blood products.  There have been only about six to eight AIDS contamination suits to date in the industry, none of them against Armour.  Revlon has carried an umbrella excess liability policy of $60 million, and the benefits of a substantial portion of this coverage will be available for USV/Armour product claims arising during the pre-acquisition period.

The second document produced by the insureds is a copy of an April 10, 1986, letter from John S. Allee, an attorney with Hughes, Hubbard & Reed, to Richard Lange, forwarding to Lange a copy of the third document produced, a memorandum by Hughes Hubbard titled "Survey of Blood Immunity Statutes and Case Law." This survey provides a state-by-state analysis of the law applicable to entities engaged in the preparation, distribution and use of human blood and blood products.

The fourth document is a copy of an April 18, 1986, letter from Allee to Lange following up on the April 10 letter and suggesting steps Lange should consider as a part of his risk assessment and reduction efforts.  In producing a copy of this seven page letter, Rhône-Poulenc and Armour redacted approximately one half of the typed material on the fifth page and the entire sixth page, and reported to the insurers that the

deleted material contained very general advice of a legal nature as well as Allee's mental impressions.

On receiving copies of these documents, Home and Pacific Employers continued to pursue their motion to compel, and asked the court to enter an order directing the plaintiffs to produce all documents in their possession, custody or control relating to the 1985 and early 1986 assessments of potential AIDS-related claims.

In the briefing in support of their motion, the insurers argued that these documents would disclose what information the insureds had about the AIDS-related claims at the time they obtained the coverage, the advice they received on whether those claims would be asserted, and their intent or expectation as to whether they would become obligated to pay damages as a result of those claims. Home and Pacific Employers argued that this information would be relevant to a number of issues in the litigation, including whether the AIDS-related claims fell within the definition of an "occurrence" under the policy, whether Rorer and Armour had sufficient knowledge of the probability of the AIDS-related claims so that in obtaining the coverage they had breached duties owed the insurers by failing to disclose facts relating to the risk that Armour's products transmitted the HIV virus, and whether or not the probability of the AIDS-related claims was sufficiently clear at the time the insureds obtained the coverage that they would not be insurable as fortuitous claims.

Home and Pacific Employers argued that by filing the suit and putting these matters in issue, Rhône-Poulenc and Armour had waived any right to object to the disclosure of the requested documents on the grounds of privilege or work product. The insurers also argued Rhône-Poulenc and Armour had waived any protection from disclosure by failing to file timely objections to the initial discovery requests seeking the disclosure of these documents and by failing to identify them on a list of documents being withheld as privileged or as work product. With regard to the redacted portion of the April 18 Hughes Hubbard letter, they argued Rorer had disclosed the letter to First Boston after the acquisition and thus had waived the privilege. They further argued that by producing a portion of the letter Rhône-Poulenc and Armour had waived the privilege as to the balance of the contents, including the advice that had been redacted.

The insurers asked the district court to enter an order compelling Rhône-Poulenc and Armour to produce all evaluations or assessments of their potential liability for AIDS-related claims arising from Armour's blood products, including those in their possession and those in the possession of their present and former agents and attorneys. This request includes documents in the possession of the law firms that had advised Rorer in connection with the acquisition of Armour: Hughes, Hubbard & Reed; Skadden, Arps, Slate, Meagher & Flom; and Montgomery, McCracken, Walker & Rhoads, as well as the accounting firm Coopers & Lybrand, and three law firms that have represented

Armour in connection with the AIDS-related claims: Morgan, Lewis & Bockius; Shanley & Fisher; and Reed Smith Shaw & McClay.

C.    The Magistrate Judge's Orders Providing for the Production of Documents

The district court referred the motion to a magistrate judge.  By an opinion and order dated March 30, 1993, the magistrate judge found the advice in the April 18 Hughes Hubbard letter relevant to matters in issue in the litigation, including whether the underlying claims arose from a fortuitous event or circumstance and were not the result of a known loss, and whether the injuries giving rise to the claims were not expected or intended.  The magistrate judge held that as Rhône-Poulenc and Armour had brought the action and had put their own conduct and the conduct of their counsel in issue, they had waived any right to object to the disclosure of the documents based on the attorney client privilege or the work product doctrine.

In addition, the magistrate judge noted that a related rationale for a finding of waiver is that the selective use of privileged information may garble the truth.  In that situation, he noted, fairness demands a party be allowed to examine the whole picture.  The magistrate judge therefore ordered the redacted portions of the April 18 letter produced and scheduled further argument on the balance of the documents sought by the insurers.

The magistrate judge heard further argument from the parties on April 13, 1993.  During that argument, counsel for the insurers argued that Rhône-Poulenc and Armour had wrongfully

failed to disclose the existence of the assessments in response to discovery requests. At the conclusion of the argument, the magistrate judge reviewed the basis for his March 30 opinion and found that the insurers had sought production of the documents long before the end of discovery. He directed Rhône-Poulenc and Armour to produce the liability assessments sought by the insurers and also directed counsel for the insurers to prepare and submit for approval subpoenas to be delivered to the law firms and accounting firm directing them to produce the documents sought by the insurers.

By letter dated April 20, 1993, counsel for the insurers submitted to the magistrate judge copies of proposed subpoenas addressed to the six law firms and the accounting firm. On April 21 the magistrate judge entered an order approving the subpoenas and providing that any objections to the subpoenas must be presented to the district court within five days from the date of the order. Thereafter, the insurers' counsel delivered subpoenas issued by the Southern District of New York on Hughes Hubbard, Skadden Arps, and Coopers & Lybrand at their offices in New York City and sought production of the documents at Simpson Thatcher & Bartlett's offices in New York on May 3, 1993. They delivered subpoenas issued by the Eastern District of Pennsylvania on Morgan Lewis, and Montgomery McCracken at their offices in Philadelphia and sought production of the documents at Fox, Rothschild, O'Brien & Frankel's offices in Philadelphia on May 3, 1993. They also delivered subpoenas issued by the Eastern District of Pennsylvania on Shanley & Fisher at its offices in

Morristown, New Jersey and on Reed Smith at its offices in Philadelphia and sought production of the documents at White and Williams' offices in Philadelphia on May 3, 1993.  The subpoenas sought production of the following documents:

1.  All documents, including, but not limited to, time billing records, that reflect the date of your retention by plaintiffs and/or the purpose of your work for plaintiffs.

2.  All documents concerning actual or potential AIDS-related claims against plaintiffs or against any other company or entity which manufactured and/or distributed blood products, to the extent that such documents were received or created, or are contained in files pertaining to, your work for plaintiffs.

3.  All documents that constitute, were reviewed in preparation for, or are contained in files concerning actual or potential AIDS-related claims.

4.  All documents concerning insurance coverage for actual or potential AIDS-related claims against plaintiffs.

5.  All documents concerning (i) blood shield statutes; (ii) the nature and scope of liability arising from the manufacture and/or sale and/or use of blood products generally; and (iii) the nature and scope of liability arising from the manufacture and/or sale and/or use of Armour's blood products in particular.

6.  All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacture and/or sale and/or use of Armour's blood products communicated by Rorer or any agent or representative of Rorer to persons and/or entities interested in acquiring Armour or any of its assets in 1986.

7.  All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacturer and/or sale and/or use of Armour's blood products communicated by you or others to Rorer in connection with the attempted sale of Armour in 1986.

8.  All documents concerning information and/or advice pertaining to plaintiffs' actual or potential liability for AIDS-related claims arising from the manufacture and/or sale and/or use of Armour's blood products communicated by Rorer or any agent or representative of Rorer to others in connection with the attempted sale of Armour in 1986.

Rhône-Poulenc and Armour did not appeal the March 30 order directing them to produce the redacted portion of the April 18 Hughes Hubbard letter.  They did, however, take an appeal to the district court from the magistrate judge's April 13 order, and moved to quash the subpoenas.  Skadden Arps and Morgan Lewis also moved to quash and the district court granted their motions.  In addition, all seven firms served objections to the subpoenas on the grounds that they sought documents protected from disclosure as privileged and as work product and on the grounds of relevance, vagueness and oppressiveness.  The presentation of these matters resulted in a clarification of the status of certain discovery requests, of Rhône-Poulenc and Armour's responses to those requests, and of agreements that had apparently been reached by the parties but had not been filed with the court.  The rediscovery of this information caused counsel for the insurers to abandon the argument that Rhône-Poulenc and Armour had wrongfully failed to identify these documents in discovery or had waived objections to producing them by failing to respond to discovery requests or by failing to list the documents on a privilege log.  Thereafter, the district court found that these procedural matters would not be controlling on an appeal from the magistrate judge's order, as it appeared the

magistrate judge would have ordered production of the documents in any event.

D.   The District Court's Order Denying Objections to the Magistrate Judge's Order and Denying Motions to Quash

The district court heard argument on the appeal and motions to quash on July 28, 1993.  By an opinion and order dated August 6, 1993, and entered on August 9, the court found:

> In accordance with [the magistrate judge's] findings, this court adjudges the subpoenas to pertain to directly relevant information. At issue is Plaintiffs' knowledge of the liabilities associated with the acquisition of Armour.  The issues put into question by this lawsuit focus around Plaintiffs' knowledge of the underlying claims and when they became aware of such claims.  This court finds that the documents The Home and PEIC seek will aide in disclosing what and when Plaintiffs knew of the underlying claims. Thus, the information contained in the requested documents is directly relevant. Therefore, in this instance this court finds it necessary to invade the attorney-client privilege.

The district court denied the insureds' objections to the magistrate judge's order and the motions to quash, and reinstated Skadden Arps and Morgan Lewis' obligations to produce documents identified in the subpoenas.  By that decision, the district court held: (1) in filing the action for a declaration of insurance coverage, Rhône-Poulenc and Armour had put in issue the knowledge they had as to potential AIDS-related claims at the time they purchased the coverage; (2) by putting their knowledge of those matters in issue, they had waived the privilege to prevent the disclosure of attorney client and accountant client

communications relevant to those matters; and (3) by putting their knowledge of these matters in issue, they had also waived the protection from disclosure of the work product of their attorneys.

Plaintiffs, their attorneys and accountants sought reargument on that decision and by an order dated October 4, 1993, the district court denied their motion.

E.    The Appeal and Petition for a Writ of Mandamus

On October 15, 1993, Rhône-Poulenc and Armour filed petitions with this court for a stay of the August 6 order and for a writ of mandamus directing the district court to vacate and reverse the August 6 order.  On October 19, 1993, Rhône-Poulenc and Armour filed a notice of appeal from that order and the court's order denying the motion for reargument.

We have entered orders staying the discovery, consolidating the proceedings on the petition and the appeal, and granting the petition to intervene filed by the six law firms and Coopers & Lybrand.

II.  DISCUSSION

A.  Jurisdiction and Scope of Review

Rhône-Poulenc and Armour urge us to find that we have jurisdiction to hear this appeal under 28 U.S.C. § 1291.  Section 1291 states that the courts of appeals have jurisdiction over appeals from all final decisions of the district courts of the United States.  Generally, discovery orders are not final and not reviewable under this section.  However, under the collateral order doctrine a discovery order is appealable where it meets the following three criteria:

> First, the order must conclusively determine the
> disputed question.  Second, the order must resolve an
> important issue completely separate from the merits of
> the action.  Third and finally, the order must be
> effectively unreviewable on appeal from a final
> judgment.

Smith v. BIC Corp., 869 F.2d 194, 198 (3d Cir. 1989).

Rhône-Poulenc and Armour argue that each element of this test is present here because: (1) the order they appeal from conclusively determines that they must disclose privileged communications and work product; (2) the order resolves issues totally separate from the merits of the case; and (3) the order will not be effectively reviewable after judgment, as the privilege and confidentiality for the information in the documents will be lost when they are produced.

In Smith, we held that the public disclosure of trade secrets is not effectively reviewable.  A trade secret is valuable because it allows a business to obtain an advantage over competitors who do not know or use it.  The damage suffered by a

business due to public disclosure of trade secrets cannot be remedied by an appellate court because the court cannot make the information secret again.  Here, however, an appellate court can remedy any damage resulting from the erroneous disclosure of documents after judgment.  As the United States Court of Appeals for the Tenth Circuit recently explained:

> The practical consequences of the district court's decision on the controversy between the parties can be effectively reviewed on direct appeal following a judgment on the merits.  If this court determines that privileged documents were wrongly turned over to the plaintiffs and were used to the detriment of defendants at trial, we can reverse any adverse judgment and require a new trial, forbidding any use of the improperly disclosed documents.  Plaintiffs would also be forbidden to offer at trial any documents, witnesses, or other evidence obtained as a consequence of their access to privileged documents.

Boughton v. Cotter Corporation, 10 F.3d 746, 749 (10th Cir. 1993).

As the district court's order is effectively reviewable on appeal from a final judgment, section 1291 does not give us jurisdiction to hear an appeal at this time.

Alternatively, the insureds argue that we should decide the matter pursuant to our authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), which provides that the federal courts may issue all writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The two prerequisites for the issuance of a writ of mandamus are that the petitioners have no other adequate means to obtain the relief sought and that they have shown that their right to the writ is clear and

indisputable.  Kerr v. United States Dist. Court, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).

Mandamus may properly be used as a means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality.  Haines v. Liggett Group Inc., 975 F.2d 81, 89 (3d Cir. 1992); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1118 (3d Cir. 1986); Sporck v. Peil, 759 F.2d 312, 314, 315 (3d Cir. 1985), cert. denied, 474 U.S. 903; Bogosian v. Gulf Oil Corp., 738 F.2d 587, 592 (3d Cir. 1984).  See also, Chase Manhattan Bank, N.A. v. Turner & Newall, PLC., 964 F.2d 159 (2d Cir. 1992); In re von Bulow, 828 F.2d 94 (2d Cir. 1987).  We find that the petitioners have no other adequate means to attain relief from the district court's order that compels the disclosure of privileged information and work product.  In addition, we find that the district court has committed clear errors of law in ordering that information disclosed.  The petitioners' right to the writ is, therefore, clear and indisputable.  We will exercise mandamus jurisdiction to resolve the issues raised by the petitioners.

B.  Whether Rhône-Poulenc and Armour have Waived the Attorney Client Privilege by Filing this Suit to Establish Insurance Coverage

Federal Rule of Civil Procedure 26(b)(1) provides:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature,

custody, condition, and location of any
books, documents, or other tangible things
and the identity and location of persons
having knowledge of any discoverable matter.
The information sought need not be admissible
at the trial if the information sought
appears reasonably calculated to lead to the
discovery of admissible evidence.

Rule 26 thus provides that relevant but privileged matters are not discoverable. As a result, it frequently occurs that a party has documents containing information relevant to matters of consequence in the action, but does not produce the documents or disclose confidential communications, and the information is not offered into evidence at trial. In this case, Home and Pacific Employers seek to discover more than just information on what facts Rorer and Armour had gathered about potential AIDS-related claims before they purchased the policies. They also seek to discover the advice counsel provided to Rorer with regard to the legal significance of those facts and documents that identify and disclose communications relating to that advice. Those communications and the documents containing those communications would normally be protected from disclosure by the attorney client privilege.

As the claims and defenses in issue in this action arise under state law, Federal Rules of Evidence 501 and 1101(c) provide that we should apply state law in determining the extent and scope of the attorney client privilege.[1] The parties and

---

[1] Rule of Evidence 501 reads:

**Rule 501.  General Rule**

intervenors agree that we should look to the privilege rules of the forum state, the Commonwealth of Pennsylvania, as establishing the privilege for the attorney client communications in issue in this case.[2] No one has argued, however, that there are any principles or rules of law as to the attorney client privilege unique to Pennsylvania that should control the resolution of our decision on these matters.

The traditional elements of the attorney client privilege that identify communications that may be protected from

---

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Rule of Evidence 1101(c) reads:

**(c)  Rule of privilege.**

The rule with respect to privileges applies at all stages of all actions, cases, and proceedings.

[2]  Pennsylvania has codified the attorney-client privilege at 42 Pa.C.S.A. § 5928 (Purdon 1982) as follows:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. See In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979) citing United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D.Mass. 1950); see also, 8 Wigmore, Evidence, § 2292, at 554 (J. McNaughton rev. 1961) (1st ed. 1904).

While documents may be protected from disclosure in discovery because they contain confidential communications that are privileged, that protection may be inapplicable to facts incorporated in the communication. Upjohn Co. v. United States, 449 U.S. 383, 395-396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, `What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

<u>Id.</u> (quoting <u>City of Philadelphia, Pa. v. Westinghouse Elec.</u>
<u>Corp.</u>, 205 F. Supp. 830, 831 (E.D.Pa. 1962)).

Evidentiary privileges are an exception to the general rule
that relevant evidence is admissible.  Privileges forbid the
admission of otherwise relevant evidence when certain interests
the privileges are thought to protect are regarded as more
important than the interests served by the resolution of
litigation based on full disclosure of all relevant facts.  The
privilege forbidding the discovery and admission of evidence
relating to communications between attorney and client is
intended to ensure that a client remains free from apprehension
that consultations with a legal adviser will be disclosed.  <u>See</u>
<u>Hunt v. Blackburn</u>, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488
(1888).  <u>See</u> Wigmore, § 2290, at 543.  The privilege encourages
the client to reveal to the lawyer confidences necessary for the
lawyer to provide advice and representation.  <u>Upjohn Co. v.</u>
<u>United States</u>, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d
584 (1981).  <u>See</u> E. Cleary, <u>McCormick on Evidence</u>, § 87, at 314
(3d ed. 1984).  As the privilege serves the interests of justice,
it is worthy of maximum legal protection.  <u>Haines v. Liggett</u>
<u>Group Inc.</u>, 975 F.2d 81, 90 (3d Cir. 1992).

If we intend to serve the interests of justice by
encouraging consultation with counsel free from the apprehension
of disclosure, then courts must work to apply the privilege in
ways that are predictable and certain.  "An uncertain privilege--
or one which purports to be certain, but rests in widely varying

applications by the courts--is little better than no privilege."
In re von Bulow, 828 F.2d at 100.

There is authority for the proposition that a party can
waive the attorney client privilege by asserting claims or
defenses that put his or her attorney's advice in issue in the
litigation.  For example, a client may waive the privilege as to
certain communications with a lawyer by filing a malpractice
action against the lawyer.  See Wigmore, § 2327, at 638.  A
defendant may also waive the privilege by asserting reliance on
the advice of counsel as an affirmative defense.  Chevron Corp.
v. Pennzoil Co., 974 F.2d 1156 (9th Cir. 1992) (party's claim
that its tax position was reasonable because it was based on
advice of counsel puts advice in issue and waives privilege); see
also, Hunt v. Blackburn, 128 U.S. at 470, (client waives
privilege when she alleges as a defense that she was misled by
counsel).  See generally, E. Cleary, McCormick on Evidence § 93,
at 343 (3d ed. 1984).  In an action for patent infringement,
where a party is accused of acting willfully, and where that
party asserts as an essential element of its defense that it
relied upon the advice of counsel, the party waives the privilege
regarding communications pertaining to that advice.  Mellon v.
Beecham Group PLC, 17 U.S.P.Q.2d 1149, 1151 (D.N.J. 1991); see
also, e.g., W.L. Gore & Associates, Inc. v. Tetratec Corp., 15
U.S.P.Q.2d 1048, 1051 (E.D.Pa. 1989) (client waived privilege by
asserting reliance upon advice of counsel as an essential element
of his defense).

In these cases, the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue. Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice. Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication. North River Insurance Company v. Philadelphia Reinsurance Corporation, 797 F. Supp. 363, 370 (D.N.J. 1992); Pittston Company v. Allianz Insurance Co., 143 F.R.D. 66, 71 (D.N.J. 1992).

Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. However, the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice. When the advice of counsel is asserted as a defense by the infringer, the patent owner may explore facts that would make it more probable than not that the infringer did not rely in good faith on that advice, including for example, what the advice was, when it was given, whether the alleged infringer's conduct suggests he had relied on the advice and whether he had knowledge of facts

that would have led him to believe it would not be reasonable to rely on that advice.  See, e.g., Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir. 1983).

Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege.  That is, in leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege.  This certainty and predictability as to the circumstances of a waiver encourage clients to consult with counsel free from the apprehension that the communications will be disclosed without their consent.

Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation.  These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions.  See, e.g., Byers v. Burleson, 100 F.R.D. 436 (D.D.C. 1983); Hearn v. Rhay, 68 F.R.D. 574 (E.D.Wash. 1975).  These decisions are of dubious validity.  While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed.  Relevance is not the standard for determining whether or not

evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

As the attorney client privilege is intended to assure a client that he or she can consult with counsel in confidence, finding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served. Clients will face the greatest risk of disclosure for what may be the most important matters. Furthermore, because the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.

A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.

It appears that one matter in issue in this case is whether or not the insureds knew, before they obtained coverage, that Armour's pharmaceutical products were causing the transmission of HIV. Rhône-Poulenc has not waived the attorney client privilege by filing this lawsuit or by placing its state of mind in issue.

As Rhône-Poulenc and Armour have not interjected the advice of counsel as an essential element of a claim in this case, the district court erred in affirming the magistrate judge's decision and in finding they must disclose documents relating to the AIDS-related evaluation that would otherwise be protected from disclosure by the attorney client privilege.  Accord, Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408 (D.Del. 1992).

In summary, we emphasize that our holding is not meant to preclude disclosure of the knowledge the insureds possessed at the time they obtained coverage.  Facts are discoverable, the legal conclusions regarding those facts are not.  A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.  Rather than separately review each subpoena served on the law firms, it should suffice to say that each subpoena seeks the production of both privileged and discoverable documents.  Because some documents may contain both discoverable and privileged information it would be appropriate, if not too burdensome, to redact them accordingly.  See Bogosian v. Gulf Oil Corp., 738 F.2d 587, 595 (3d Cir. 1984); In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988).  On remand the insurers may redraft the subpoenas in a manner consistent with this opinion.

     C.    Whether Rhône-Poulenc and Armour have Waived the Accountant Client Privilege by Filing this Suit to Establish Insurance Coverage

In affirming the magistrate judge's decision approving the subpoena served on Coopers & Lybrand, the district court did not speak to the accountant client privilege recognized under Pennsylvania law.[3] On remand, the district court should determine the applicability of the accountant client privilege, and whether that privilege has been waived. If there has been a waiver, the district court should then determine the extent of that waiver. The district court should also examine the other objections to the subpoena.

---

[3]  Pennsylvania has codified the accountant client privilege at 63 Pa.C.S.A. § 9.11a (Purdon 1994) as follows:

> Except by permission of the client or person or entity engaging him . . . a certified public accountant . . . shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed relative to and in connection with any professional services as a certified public accountant. . . . The information derived from or as the result of such professional services shall be deemed confidential and privileged[.]

D. Whether Rhône-Poulenc and Armour have Waived the Attorney Client Privilege by Failing to Object to Discovery Requests and by Failing to Serve a Privilege Log

In their motion to compel, Home and Pacific Employers also argued that Rhône-Poulenc and Armour had wrongfully failed to object to the disclosure of documents in their response to the insurers' discovery requests, and had wrongfully failed to serve a list identifying the documents they were withholding. Home and Pacific Employers sought an order from the magistrate judge finding that by failing to object and to supply a list of documents being withheld, Rhône-Poulenc and Armour had waived the protection of the attorney client privilege.

It appears from the transcript of the April 13, 1993, hearing on their motion to compel that the magistrate judge did look to the plaintiffs' failure to list privileged documents as a basis for granting the insurers' motion to extend the time for discovery. The magistrate judge did not, however, find that the insureds' failure to object and to provide a list of privileged documents was a waiver of the privilege. The failure to object was not a basis for his decision to order these documents produced.

As we noted above, in connection with the appeal to the district court from the magistrate judge's decision, Home and Pacific Employers abandoned this waiver argument after Rhône-Poulenc put on the record documents that suggest Home had agreed to defer the insureds' obligation to respond to certain discovery requests. In their briefing on the petition and this appeal,

Home and Pacific Employers have sought to reintroduce this issue into the case and have suggested that the magistrate judge and district court concluded that a major factor warranting expedited disclosure of these documents was the petitioners' concealment of the documents.  That argument is neither consistent with the facts nor supported by the record.  Therefore, we find that the magistrate judge was correct in disregarding the failure to object.

     E.    <u>The Extent of Rhône-Poulenc and Armour's Waiver of the Attorney Client Privilege by Cawthorn's Testimony and the Disclosure of the Hughes Hubbard Correspondence</u>

Home and Pacific Employers also argued to the magistrate judge that Rhône-Poulenc and Armour had waived the protection of the privilege for the AIDS-related evaluation documents when Cawthorn testified about the investigation and when Rhône-Poulenc produced the First Hughes Hubbard report and all but a portion of the second.  The magistrate judge apparently agreed, at least to the extent that he found in his March 30, 1993, memorandum opinion that in fairness the selective disclosure of privileged communications required disclosure of the whole picture and ordered the disclosure of the redacted portion of the second Hughes Hubbard letter.  Rhône-Poulenc and Armour did not appeal that decision to the district court.

Neither the magistrate judge nor the district court relied on this waiver by disclosure as a basis for granting the insurers' motion to compel the production of the documents

relating to the AIDS-related evaluation.  As this issue was never presented to the district court, we need not address its merits.

F.    Whether Rhône-Poulenc and Armour have Waived the Protection From Disclosure for Their Attorneys' Work Product

There are numerous substantive and procedural errors with the subpoenas approved by the magistrate judge.  In granting the petitioners the relief they seek and in finding they are not obligated to produce the documents identified in the subpoenas, we will not address each of these issues.  Two principal matters lead us to the conclusion that the subpoenas should not have been approved or issued.  First, it appears the magistrate judge and the district court's decisions to approve the subpoenas were based on their conclusion that Rhône-Poulenc and Armour's privilege to protect the disclosure of confidential attorney client communications had been waived as the insureds' state of mind was in issue in the action.  As noted above, we have concluded that these decisions constituted an error of law.

Second, it appears the magistrate judge and the district court had concluded that a finding that the insureds had waived the attorney client privilege necessarily meant they had also waived the protection from disclosure for the work product of the firms that had represented and advised them.  For a number of reasons, one does not lead to the other.  As a factual matter, if the state of mind of the insureds is in issue, papers reflecting the work product of counsel that were not shared with or communicated to the clients are not relevant.  Work product that

was not communicated to the client cannot affect the client's state of mind. See Thorn EMI North America, Inc. v. Micron Technology, Inc., 837 F. Supp. 616 (D.Del. 1993). In approving the subpoenas and denying the motions to quash, the court failed to determine whether the documents sought were relevant to the matters in issue or were reasonably calculated to lead to the discovery of admissible evidence.

More significantly, in ordering the broad range of documents produced, the magistrate judge and the district court failed to consider that the protection stemming from the work product doctrine belongs to the professional, rather than the client, and that efforts to obtain disclosure of opinion work product should be evaluated with particular care. See Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 509, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."); Haines v. Liggett Group Inc., 975 F.2d at 94 ("This court has accorded an attorney's work product almost absolute protection from discovery."); In re Grand Jury Proceedings (FMC Corp.), 604. F.2d 798, 801 n. 4 (3d Cir. 1979) (right to assert the privilege belongs to the attorney).

We find the district court erred in denying the motions to quash these subpoenas. While the subpoenas may identify certain documents that are discoverable, as drafted and served they appear to seek the production of documents that are protected from disclosure as the work product of attorneys or by the attorney client privilege.

While Rhône-Poulenc and Armour's disclosure of the Hughes Hubbard reports may provide a basis for finding that certain of the documents identified by the subpoenas are discoverable, it appears that the subpoenas are generally directed to documents for which there is no basis for believing there had been or could be a waiver by the clients.

III. <u>CONCLUSION</u>

We find that the district court erred in affirming the magistrate judge's decision finding Rhône-Poulenc and Armour had waived the attorney client privilege by putting their state of mind in issue, and erred in denying the motions to quash the subpoenas served on the law firms. The district court should reconsider its decision not to quash the subpoena served on the accounting firm. We will dismiss the appeal. We will issue a writ of mandamus, and direct the district court to vacate its Order of August 6, 1993, and to quash the subpoenas served on the law firms. We will remand the case for further proceedings.

_____

_____