# HUNT v. BLACKBURN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF ARKANSAS.

No. 16. Submitted November 1, 1888. — Decided November 26, 1888.

At common law, when lands are granted to husband and wife as tenants in
common, they hold by moieties as other distinct and individual persons
do.

The privilege of secrecy upon communications between a client and an
attorney-at-law is a privilege of the client alone; and if he voluntarily
waives it, it cannot be insisted upon to close the mouth of the attorney.

The Supreme Court of Arkansas and the Circuit Court of Desha County
having both adjudged that the appellee and her husband held the tract
of land which is the subject of controversy in moieties, and that those
through whom the appellant claims became the owners in fee, succes-
sively, of the husband's undivided half, these decrees, standing unre-
versed, are binding adjudications in favor of the complainant's title, and
justified him in advancing money upon the strength of it.

The evidence fails to satisfy the court that there was any deceit practised
towards the appellee, or any misapprehension on her part of the transac-
tions recited in the record, or any advice given to her in fraud, or in
mistake of fact or law.

THE submission of the motion to reinstate this case after its
dismissal at October term, 1887, for want of jurisdiction is
reported 127 U. S. 774. On the 22d October, 1888, (at the
present term,) the order of dismissal made at the last term was
set aside, and the case was restored to the docket, and was, on
the 1st of November, submitted. The case was stated by the
court as follows:

Hunt filed his bill in equity in the District Court for the
Eastern District of Arkansas, on the 25th of June, 1881,
against Sallie S. Blackburn, Charles B. Blackburn, and W. P.
Smith, claiming as a purchaser for value, with the knowledge
and assent of Sallie S. Blackburn, of an undivided half of a
plantation in Desha County Arkansas, of which the defendant,
Sallie S. Blackburn, owned the other half; and deraigning
title by sundry mesne conveyances from one Shepard to W.
A. Buck, whose wife said Sallie S. then was, by Buck and
wife to Drake, Drake to Winfrey, who, as Hunt alleged, pur-

chased for value with Mrs. Buck's knowledge and assent, Win frey's assignee to Weatherford, and Weatherford to himself; setting up certain decrees hereinafter mentioned, and praying, after averments appropriate to such relief, that his title be quieted, and for partition.

Defendant Sallie S. Blackburn answered April 25, 1883, asserting sole ownership of the lands under a deed from Shepard to W. A. Buck, her then husband and herself, and charging, in respect to the decrees upon the title, that she was misled by her attorney and confidential adviser, Weatherford, as to her rights, and was not estopped thereby or by any conduct of hers, in faith of which either Winfrey or Hunt acted in purchasing.

The cause was heard and the bill dismissed March 10th, 1884, and from that decree this appeal was prosecuted.

The case made upon the pleadings and evidence appeared to be as follows: Sallie S. Blackburn, then Sallie S. Buck, wife of Walter A. Buck, on the 24th day of April, 1868, purchased of one Shepard an undivided half of 973 acres of land in Desha County, Arkansas, partially improved, and took a title bond stipulating for a mode of division to be made between her and her vendor, as soon as practicable, so that each should have half the improved land, and for a conveyance in fee to Mrs. Buck when the division was made. Mrs. Buck was put in possession of an undivided half in accordance with the agreement. In June, 1868, W. A. Buck, the husband, purchased the other half of Shepard, who gave him a written memorandum evidencing the purchase. Buck then, in January, 1869, sold his half to J. S. Drake, conveying the same to him on the second day of that month by warranty deed, in which his wife, Sallie S., joined, her acknowledgment being that for relinquishment of dower.

The evidence tends to show that during 1868 Shepard executed and delivered a deed of the property to Mr. and Mrs. Buck, so drawn as to recognize their separate interests, which deed was not recorded, but in January, 1869, when Buck sold to Drake, the latter's then attorney was not satisfied and drew another deed of the entire property for Shepard to execute,

which he did, running directly to Walter A. Buck and Sallie S. Buck, and bearing the same date as the deed to Drake, January 2d, 1869.

Drake and Buck and wife farmed the land in partnership up to 1872, when, on the 7th of February of that year, Drake sold to J. T. Winfrey, and gave him an agreement to convey. In the meantime Buck died, and on the 11th day of March, 1872, Mrs. Buck filed her sworn bill in equity against the children and heirs at law of Buck, deceased, Shepard, Drake, Winfrey, and others, in the Circuit Court of Desha County, claiming an undivided half of the land, setting forth the ownership by her husband of the other half, his sale to Drake and Drake's to Winfrey, and praying that her title to "said undivided half of said property" be quieted, and for partition. Upon this bill a decree was rendered September 12th, 1873, which found the purchase by Mrs. Buck of Shepard, April 24th, 1868, of an undivided half of the lands, and the subsequent purchase by Buck of the other half, and Buck's sale and conveyance of "his half of said land" to Drake, and quieted Mrs. Buck's title to an undivided half.

Shepard derived title to the lands through a purchase under a deed of trust given by Henry J. Johnson to one Tate, and by mistake one parcel was omitted from the trust deed, and the mistake had been inadvertently carried through all the successive conveyances down to the Bucks. In 1872 Randolph, a judgment creditor of Johnson, had caused an execution to be levied on the omitted parcel, and Mrs. Buck and Drake filed a bill in the Desha Circuit Court against Randolph, Winfrey, and others, to enjoin sale upon the execution, correct the mistake, quiet the title and compel Winfrey to complete his purchase. Pending the suit, Mrs. Buck changed her name by intermarriage with Blackburn, who was made a party, and subsequently died.

This case went to decree, dismissing the bill, from which an appeal was prosecuted to the Supreme Court of Arkansas, the decision of which tribunal is reported under the title, *Blackburn* v. *Randolph*, in 33 Arkansas, 119. The opinion, after setting forth Shepard's title, states that he sold "an undivided half

of the lands to complainant S. S. Buck, and still later the other undivided half to her husband, W. A. Buck, since deceased, but who in his lifetime sold his interest to complainant Drake, who afterwards sold to Winfrey." The decree of the Circuit Court was reversed, and a decree entered in the Supreme Court, at the November Term, 1878, "vesting in complainant Sallie S. Blackburn and defendant J. T. Winfrey, all the legal and equitable title in and to said plantation that was in Henry J. Johnson at the time of the execution of the deed of trust to said Tate." It appears, also, from the report of this case, that Johnson had given a mortgage on the land to one Graddy, who filed a bill to foreclose it, setting up the sale to Shepard and his sale to W. A. and Sallie S. Buck, who were made parties, and that a decree was rendered in said cause, October 28th, 1869, confirming the title to said lands in Buck and wife under said purchases.

In the conveyance by Buck and wife to Drake, January 2, 1869, it was provided that if any recovery was had in the suit of Graddy against Johnson, and "it results as an incumbrance upon this property, the first party are only liable to the extent of their one-half interest in said lands, and the second party takes subject to this liability."

During 1878 Winfrey filed his voluntary petition in bankruptcy in the United States District Court for Middle Tennessee, scheduling half of the lands among his assets, and the register in bankruptcy conveyed, November 1st, 1878, to Harry Harrison, Winfrey's assignee. The property was sold and conveyed by the assignee to Weatherford, January 30th, 1880, and Weatherford conveyed to Clarence P. Hunt, July 11th, 1880.

Weatherford testifies that Mrs. Buck informed him that she had been told she could "beat Mr. Drake out of any interest in the place," but had replied "that she did not wish to beat him out of it, as her husband had sold to him in good faith; all she wanted was to have him settle in accordance with the agreement made in her husband's lifetime;" and Weatherford commended her reply, and told her he did not think "she could beat Drake if she were to try." Exactly when this con-

versation took place is not clearly made out, but the evidence tends to show that it was in 1871 or 1872, and before March 11th, 1872, the date of the commencement of the suit of Mrs. Buck against Buck's heirs. Weatherford had drawn the original conveyance from Shepard, recognizing, as he believes, the separate interests; and Weatherford acted as solicitor for Drake and Mrs. Buck, afterwards Blackburn, in the litigation which resulted in the decree by the Supreme Court of Arkansas, and for Mrs. Buck in that against Buck's heirs, which went to decree in the Desha County Circuit Court. Originally Mrs. Buck's attorney, he had as time went on become Drake's attorney, and it was as such that he purchased the property at the assignee's sale, and then sold and conveyed to Hunt at Drake's request, receiving himself only the amount of his charges, but Drake receiving acquittance of several thousand dollars which Hunt had advanced to him upon the strength of Drake's interest in the property, in respect to which Weatherford had advised Hunt that it was ample to insure him against loss.

Weatherford was not, at this time, acting as Mrs. Blackburn's attorney. She had resorted to another professional adviser in relation to her interest in the land in 1876, who died in 1878, when she consulted his surviving partner. So far as appears, Weatherford had no knowledge or information which would have led him to suppose, up to June, 1880, when he conveyed to Hunt, that Mrs. Blackburn was determined to claim the whole land as her own.

In 1875 Mrs. Blackburn wrote Weatherford: "It is Mr. Drake's half of the place that has been sold for taxes, and not mine. I think Mr. Winfrey has given up all idea of having anything to do with the place, as they have all left here, and I am in possession and never intend to give it up until Drake and Winfrey settle, and I know to a certainty who it belongs to, so I can have a permanent division. I am having rails made, so as to fence my half when I know where it is."

This letter and some others in the record were apparently written to Weatherford as a friend rather than as an attorney; but a motion was made on behalf of Mrs. Blackburn to sup-

press Weatherford's depositions, of which there were two, and the letters, upon the ground that the former related to matters communicated to Weatherford in confidence as her attorney, and that the letters were equally confidential.

*Mr. J. B. Heiskell* for appellant.

No appearance for appellees.

Mr. Chief Justice Fuller delivered the opinion of the court.

Undoubtedly, at common law, husband and wife did not take, under a conveyance of land to them jointly, as tenants in common or as joint tenants, but each became seized of the entirety, *per tout, et non per my;* the consequence of which was that neither could dispose of any part without the assent of the other, but the whole remained to the survivor under the original grant. 2 Bl. Com. 182; 2 Kent's Com. 113; 1 Washburn, Real Prop. (4th ed.) 672. Nor had this rule been changed at the time of these transactions by the constitution or statutes of Arkansas. *Robinson* v. *Eagle,* 29 Arkansas, 202. But it was also true at common law, that, as " in point of fact, and agreeable to natural reason, free from artificial deductions, the husband and wife are distinct and individual persons, . . . when lands are granted to them as tenants in common, thereby treating them without any respect to their social union, they will hold by moieties, as other distinct and individual persons would do." 1 Preston on Estates, p. 132; 1 Inst. 187 b; 1 Washburn, Real Prop. (4th ed.) p. 674; *McDermott* v. *French,* 15 N. J. Eq. (2 McCarter) 78, 80.

The Supreme Court of Arkansas and the Circuit Court of Desha County must have proceeded upon the conclusion that Buck and his wife held by moieties, in decreeing that, through their conveyance, Drake and Winfrey became the owners in fee, successively, of Buck's undivided half of the lands in question; and the decrees of these two courts to that effect, standing unreversed, would seem to be binding adjudications in favor of complainant's title.

In the Circuit Court case Mrs. Buck sought and obtained ι decree quieting her title to an undivided half as between he and Buck's heirs and Drake, Buck's grantee, and holding a ta: title to have been acquired for the benefit of Drake and herself, and she is to be held to have embraced her whole cause of action in one suit.  In the Supreme Court case she had joined with Drake, in seeking relief as co-owners, against an execution sale of a parcel of the land, the rectification of a mistake in the deeds, and the vesting of title in herself and Drake, and the compelling Winfrey to accept title to the Drake half, and that relief was in substance accorded by the decree.

Under such circumstances it cannot be denied that Hunt was justified in advancing his money upon the strength of the Drake-Winfrey title.

Defendant Blackburn insists, however, in her answer, that the part she took in the litigation of these two cases was the result of misplaced confidence in her counsel, by whom she alleges she was deceived, misadvised and misled; that she was ignorant of her rights; and that she ought not to be held estopped in the premises, while at the same time, it is objected on her behalf, that her attorney, on the ground of privileged communications, should not be permitted to defend himself by testifying to the facts and circumstances under which he advised her and the advice which he actually gave.

The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.  But the privilege is that of the client alone, and no rule prohibits the latter from divulging his own secrets; and if the client has voluntarily waived the privilege, it cannot be insisted on to close the mouth of the attorney.  When Mrs. Blackburn entered upon a line of defence which involved what transpired between herself and Mr. Weatherford, and respecting which she testified, she waived her right to object

to his giving his own account of the matter.  As, for instance, when she says that the original deed from Shepard was drawn by Weatherford, that she has not got it, and that she thinks she gave it to him, it is clear that her letter of July 6, 1875, calling for that deed, and Weatherford's reply of July 14th, enclosing it, are admissible in evidence.

But, apart from Weatherford's evidence, the testimony of Mrs. Blackburn and Drake, together with the documents in the case, fail to satisfy us that there was any deceit or misapprehension in the premises, or any advice given Mrs. Blackburn in fraud or in mistake of fact or law.  Buck and his wife purchased the separate halves at different times, and with the intent of holding in moieties, and conveyed Buck's half to Drake, who paid therefor in good faith and without actual notice.  The second deed of Shepard was so drawn as to run directly to Buck and wife, and upon the language in which it was couched this claim is set up.  And yet that second deed was given, on request of Drake's attorney, at the very time when Buck and his wife were conveying to Drake for valuable consideration.  The injustice of allowing Mrs. Blackburn to insist, years afterwards, that by that deed she acquired an estate by entirety is too apparent to need comment; nor could such deed divest the title which had once vested in her husband and herself by the former conveyance from the same grantor, nor alter its nature.

*The decree will be reversed and the cause remanded for further proceedings in conformity with this opinion.*