**COMMODITY FUTURES TRADING COMMISSION, Petitioner-Appellee,**

v.

**Gary WEINTRAUB, Respondent,**

and

**Frank H. McGhee and Andrew McGhee, Intervening Respondents-Appellants.**

No. 82–2420.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1983.

Decided March 19, 1984.

Helen G. Blechman, Deputy Gen. Counsel, C.F.T.C., Washington, D.C., for petitioner.

David A. Epstein, Jann, Carroll, Sain & Dolin, Chicago, Ill., for intervening respondent.

Before PELL and COFFEY, Circuit Judges, and WEIGEL, District Judge.*

WEIGEL, District Judge.

Two individuals, both officers and shareholders in a bankrupt corporation, appeal from an order of the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1291. The district court, by minute order, affirmed a United States Magistrate's order that the trustee in bankruptcy of the bankrupt firm had the authority to waive the corporation's attorney-client privilege, as to "all communications or information ... occurring or arising on or before" the

* The Honorable Stanley A. Weigel, Senior District Judge for the United States District Court for the Northern District of California, is sitting by designation.

date the petition in bankruptcy was filed.[1] For the reasons set out below, we reverse.

## I

Chicago Discount Commodity Brokers, Inc. ("CDCB") was a discount commodity brokerage house registered with the Community Futures Trading Commission (the "Commission") as a futures commission merchant. On October 27, 1980, the Commission filed a complaint against CDCB in the United States District Court for the Northern District of Illinois alleging violations of the Commodity Exchange Act, 7 U.S.C. § 6d(2) (Supp. III 1979). Also, on October 27, 1980, a consent decree was entered into, which provided, *inter alia,* for an immediate freeze on corporate assets, the appointment of a receiver, and that the Commission would be permitted to investigate CDCB's operations. The district court appointed John K. Notz ("Notz") of the Chicago law firm of Gardner, Carton & Douglas as equity receiver.

On November 4, 1980, Notz, as receiver, filed a voluntary petition in bankruptcy on behalf of CDCB. *In re Chicago Discount Commodity Brokers, Inc.,* No. 80 B 14472 (Bankr.N.D.Ill.). The petition sought relief under Subchapter IV of Chapter 7 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 761–766 (1979), which provides for liquidation of bankrupt commodity brokers. The bankruptcy court initially appointed Notz as First Interim Trustee and, later, Permanent Trustee of CDCB.

On January 28, 1981, the Commission served an administrative subpoena *duces tecum* upon respondent, Gary Weintraub ("Weintraub"), in connection with its investigation of CDCB. Weintraub formerly had represented CDCB as one of its attorneys. Weintraub appeared for deposition on Feb-

ruary 26 and 27, 1981, and, on August 26, 1981, answering approximately 800 questions in all. However, he refused to answer 23 other questions, asserting the attorney-client privilege. On December 15, 1981, the Commission filed a motion to compel answers to those 23 questions. Nevertheless, on March 11, 1982, Notz, as trustee in bankruptcy, waived the attorney-client privilege on behalf of CDCB, as to "any communications or information occurring or arising on or before October 27, 1980." [2]

On April 26, 1982, a United States Magistrate granted the Commission's motion to compel answers and directed Weintraub to appear within thirty days of the date of the order to respond to the Commission's questions. The Magistrate concluded that, although Weintraub had properly asserted the privilege, that privilege was subsequently waived by Notz. On May 6, 1982, Weintraub filed an objection to the Magistrate's order. The district court upheld that order on June 9, 1982.

On June 30, 1982, the district court granted Frank and Andrew McGhee (the "McGhees") leave to intervene in the Commission's action against Weintraub. In addition to being CDCB shareholders, both McGhees are corporate officers. Frank McGhee is president of CDCB, and until October 21, 1980, Andrew McGhee was an officer and director of the corporation.[3]

On July 27, 1982, the district court clarified its June 9, 1982, order and ruled that "[r]espondent shall respond to specific questions at issue without asserting an attorney-client privilege on behalf of Chicago Discount Commodity Brokers, Inc." On September 21, 1982, the McGhees moved the district court for a stay of the July 27, 1982, order, pending appeal of that order. The

1. *See Commodity Futures Trading Commission v. Weintraub,* No. 81–C–6996, *slip op.* at 2 (N.D.Ill. April 26, 1982).

2. *See* Letter from John K. Notz, Jr., to Constantine J. Gekas, Esq. (March 11, 1982).

3. A supplement to the record filed by the Commission in conjunction with its motion for rehearing shows that Andrew McGhee resigned his positions as officer and director of CDCB on October 21, 1980. Larry Cote, the corporate secretary and vice president, resigned the

following day. After October 22, Frank McGhee was the sole director and officer of CDCB. Nothing in the record indicates that Frank McGhee resigned these positions. Nor did Notz, through his appointment as receiver or as trustee in bankruptcy, succeed to Frank McGhee's positions. *See* 15A W. Fletcher, *Private Corporations* §§ 7396, 7657 (Rev. Ed. 1981). Consequently, we conclude that Frank McGhee remains an "officer" and "director" of CDCB.

district court denied the motion. On October 18, 1982, this Court denied an appeal from the denial of the motion for stay. In addition, on November 4, 1982, this Court denied the McGhees' motion for reconsideration of the October 18 decision.[4]

The instant appeal is from the district court's July 27, 1982, order directing Weintraub to respond to the Commission's inquiries without asserting the attorney-client privilege on behalf of CDCB.

## II

Whether the trustee of a bankrupt corporation may waive the attorney-client privilege on behalf of the corporation is a question of first impression in this Court. We undertake first to set out the purposes of the attorney-client privilege, and the application of the privilege in the corporate context.

Federal Rule of Evidence 501 governs the use of all privileges in the federal courts. The rule provides that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." On numerous occasions, the Supreme Court has spoken on the purpose of the attorney-client privilege. *See, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888). The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *See Upjohn Co. v. United States,*

449 U.S. at 389, 101 S.Ct. at 682. The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *See Trammel v. United States,* 445 U.S. at 51, 100 S.Ct. at 912. The privilege thus exists to promote full disclosure by the client, and to foster a relationship of trust between attorney and client. The assumption underlying the privilege is that "the benefits derived from encouraging communications outweigh the costs of keeping information from other parties." *See* Note, "Attorney-Client Privilege for Corporate Clients: The Control Group Test", 84 Harv.L.Rev. 424, 425 (1970).

That the attorney-client privilege adheres to corporations as well as to individuals is not subject to dispute. *See Radiant Burners, Inc. v. American Gas Ass'n.,* 320 F.2d 314, 323 (7th Cir.), *cert. denied,* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). Of course, as an artificial entity, the corporation cannot speak for itself, but must rely on its officers and agents for exercise of the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. at 390–91, 101 S.Ct. at 683.

A related question is whether the corporate attorney-client privilege exists after the corporation enters bankruptcy. A number of courts have agreed that a corporation entering bankruptcy retains the attorney-client privilege. *See In re O.P.M. Leasing Services, Inc.,* 670 F.2d 383, 385 (2d Cir. 1982); *People's Bank v. Brown,* 112 F. 652, 654 (3d Cir.1902). However, in this case, the parties disagree as to who may waive the attorney-client privilege on behalf of the bankrupt corporation. Appellants argue that they, as officers and shareholders, have sole authority to waive. Appellee, on

---

4. Following this Court's October 18, 1982, denial of a stay pending appeal, Commission counsel made several unsuccessful attempts to schedule Weintraub for deposition. On November 8, 1982, the Commission moved the district court for an order compelling respondent to appear on November 12, 1982, to respond to questions without asserting the attorney-client privilege. The district court denied the motion pending a ruling by this Court on

intervenor's motion for reconsideration of the stay pending appeal. By Order of November 4, 1982, this Court denied the motion for reconsideration. The Commission then renewed its motion in the district court for entry of an order setting the date of respondent's deposition on November 12, 1982. The district court continued the Commission's renewed motion pending the outcome of the instant appeal.

the other hand, contends that only the trustee in bankruptcy of the debtor corporation can waive.

On the issue as to whether a trustee in bankruptcy may waive the corporate attorney-client privilege, only two appellate decisions have come to our attention. Relied upon by appellee, they are In re O.P.M. Leasing Services, Inc., 670 F.2d 383, and Citibank, N.A. v. Andros, 666 F.2d 1192 (8th Cir.1982). In both of these cases, the court upheld the trustee's power to waive the attorney-client privilege on behalf of the corporation.

In O.P.M. Leasing, O.P.M. Leasing Services, Inc. ("O.P.M.") was a computer leasing and financing concern that filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act, 11 U.S.C. §§ 101 et seq. Shortly after this Chapter 11 proceeding was commenced, O.P.M.'s president and vice president, who composed the entirety of the corporation's board of directors, resigned. In the course of the reorganization proceeding, the trustee in bankruptcy waived O.P.M.'s attorney-client privilege, pursuant to a request by the United States Attorney for the Southern District of New York.[5] The then former president and vice president opposed the waiver, claiming that only the former president could rightly waive the bankrupt's privilege. The bankruptcy court rejected this argument, holding that the trustee in bankruptcy succeeded to the right of the corporation to assert or waive the attorney-client privilege. The United States District Court for the Southern District of New York affirmed.

On appeal, the Second Circuit also affirmed. Its conclusion, however, was expressly premised upon "the crucial fact . . . that there has been no board of directors of O.P.M. in existence during the tenure of the trustee." O.P.M. Leasing, 670 F.2d at 386. The court's holding was thus narrowly limited: "We hold that in this situation the power to make such a decision as is encompassed by assertion or waiver of the important attorney-client privilege adheres to the trustee by virtue of the nonexistence of any other entity authorized to so act." Id. at 387 (emphasis added).[6]

This case is different from O.P.M Leasing because Frank McGhee remains an officer and director of CDCB, the debtor corporation. Thus, the record does not show the "nonexistence of any other entity" authorized to waive CDCB's attorney-client privilege. Nor does the record show that Frank McGhee waived or relinquished control of the corporate attorney-client privilege when he consented to the transfer of corporate assets to Notz as receiver.[7]

The facts in Citibank, N. A. v. Andros are close to those in the present case, in that the officers of the bankrupt corporation, who had not resigned their offices, asserted the attorney-client privilege on behalf of the corporation. The Eighth Circuit reversed the district court's ruling that the trustee could not waive the privilege on behalf of the corporation. 666 F.2d at 1193. In reaching this conclusion, the court reasoned

---

5. The United States Attorney had convened a grand jury to investigate O.P.M. and its officers, and had served on the trustee a subpoena duces tecum requiring the production of certain O.P.M. records. The United States Attorney also requested that the trustee waive the corporation's attorney-client privilege with respect to the records.

6. The O.P.M. Leasing court based its decision on an analysis of the "competing interests" of the former officers and the trustee, and on an examination of New York corporation law. The court did not discuss the purposes of the attorney-client privilege, nor did the court analyze the argument that the power to waive the attorney-client privilege passes to the trustee with the property of the corporate debtor.

7. In its petition for rehearing, the Commission suggests that all authority to exercise the attorney-client privilege passed from McGhee to Notz by virtue of the October 27, 1980 consent decree. Part III of the Order of Preliminary Injunction and Other Relief filed as a part of the decree recites in detail the transfer of assets and powers from the corporate officers and directors to Notz as receiver. This highly specific list contains no mention of a release to the receiver of power to claim or waive the attorney-client privilege. We therefore conclude that McGhee as corporate president did not relinquish control of the attorney-client privilege when CDCB entered receivership.

that the right to assert or waive the attorney-client privilege passes with the property of the corporate debtor to the trustee. *Id.* at 1195. No authority was cited to support this interpretation except an unpublished district court order from another circuit. *See id.* (citing *In re Continental Mortgage Investors,* No. 79–593–S, slip op. at 2 (D. Mass. July 31, 1979)). The court did not address the policy in favor of encouraging full disclosure that lies beneath the attorney-client privilege. Nor did it explain why communcations between a corporation and its attorney should be treated differently in bankruptcy than communications between an individual and his attorney. After careful consideration, we do not agree with the conclusion reached in *Citibank* and the cited slip opinion that the corporate right to assert or waive the attorney-client privilege is a form of property that passes to the trustee upon bankruptcy. *Cf. O.P.M. Leasing,* 670 F.2d at 386 n. 2 (declining to assess the merit of the *Citibank* reasoning). We therefore do not follow those decisions.

### III

The Commission additionally contends that statutory law empowers the trustee in bankruptcy to waive the corporate attorney-client privilege. The trustee's authority is derived mainly from the Bankruptcy Reform Act of 1978 (the "Act"), 11 U.S.C. § 101 *et seq.* Relief under the Act is available to both individuals and corporations. *See* 11 U.S.C. § 101(30). The duties of the trustee in a Chapter 7 liquidation proceeding are extensive and primarily involve the collecting and reducing to money of the property of the debtor. *See* 11 U.S.C. § 704. Further duties are imposed upon the trustee where the corporate debtor was a commodity broker. *See* 11 U.S.C. §§ 761–766.[8]

■ Appellee maintains that because of these broad management powers, the trustee also possesses the authority to assert the attorney-client privilege on behalf of the corporate debtor. Essentially, appellee would have us believe that the right to assert or waive the attorney-client privilege passes with the property of the corporate debtor to the trustee. *See Citibank, N.A. v. Andros,* 666 F.2d at 1195. Appellee's argument is unpersuasive for several reasons.

First, although the trustee holds broad management powers for the corporate debtor, he does not replace the corporation as an entity. The corporation is capable of numerous functions even after the filing of the petition in bankruptcy. *See* 15 A, W. Fletcher, *Private Corporations* § 7657 (Rev. Ed.1981). Nor does the trustee succeed to the positions of the officers and directors of the corporation. *Id.* In brief, the corporation exists, and will continue to exist, until formally dissolved by action of its shareholders or by the state where the firm is incorporated. *See In re Amjoe, Inc.,* 11 Collier Bankr.Cas. 45 (Bankr.M.D.Fla.1976). The trustee may hold the power to manage the bankrupt corporation's property and assets, but he does not thereby acquire absolute power over the corporation's legal rights.

Second, to accept appellee's argument would be to condone an inequality of treatment between bankrupt corporations and bankrupt individuals with regard to the attorney-client privilege. Under the Bankruptcy Reform Act, as under prior bankruptcy laws, individual debtors are subject to public examination by the trustee. *See* 11 U.S.C. § 343. The debtor has a clear right to assert privileges during this examination. *See In re Blier Cedar Co.,* 10 B.R. 993 (Bkrtcy.D.Me.1981). *See also* 2 *Collier on Bankruptcy,* ¶ 343.12 (15th ed. 1982). There is little authority to support the position that the individual debtor's attorney-client privilege passes to the trustee in bankruptcy.[9] Such a passing of the privilege could engender the absurd result of the trustee waiving the debtor's privilege as to information sought by the trustee. The attorney-client privilege would then vanish

---

8. Although the Act confers broad powers on the trustee, nowhere is the trustee given specific statutory authority either to assert or waive a corporate debtor's attorney-client privilege.

9. *See In re Smith,* 24 B.R. 3 (Bkrtcy.S.D.Fla. 1982). This case relied upon the reasoning of *O.P.M. Leasing* and *Citibank,* which we, for the reasons stated above, decline to accept.

whenever the trustee, at his whim, determined that information from the debtor was necessary. By adopting appellee's contention, we would subject a debtor corporation to precisely such a risk. We perceive no reason to afford a corporate debtor less protection than that afforded an individual debtor in bankruptcy.

Third, allowing the trustee in bankruptcy to waive the attorney-client privilege of the corporate debtor discriminates against the corporate debtor solely on the basis of economic status. A solvent corporation, as long as it remains solvent, can freely assert or waive its attorney-client privilege. Once the corporation enters bankruptcy, however, it would lose to the trustee the power to control the privilege. While the trustee's interest in investigating the affairs of the corporate debtor on behalf of the creditors is certainly legitimate, it does not justify erosion of the corporation's attorney-client privilege simply on the basis of a change in economic circumstances.

Finally, and most importantly, we reject the Commission's argument because of its potential chilling effect on attorney-client communications. If the trustee in bankruptcy is permitted to waive the corporate debtor's privilege, the trust inherent in the attorney-client relationship will be jeopardized. Corporate clients will be wary of communicating fully with their attorneys for fear that sensitive information could subsequently be disclosed due to bankruptcy. Free interchange between attorney and client is the cornerstone of effective legal representation.

Therefore, we have concluded that the trustee in bankruptcy of a corporate debtor does not have the power to waive the corporation's attorney-client privilege as to any communications or information occurring or arising on or before the date the petition in bankruptcy was filed.[10]

Reversed.

---

**10.** CFTC also argues that the McGhees lack standing to challenge the trustee's waiver of CDCB's attorney-client privilege. The McGhees, as officers and shareholders of CDCB, clearly possess the requisite interest for standing.