## ROBERT BRETON v. COMMISSIONER OF CORRECTION

Superior Court, Judicial District of Tolland
File No. CV-03-0004261

Memorandum filed April 28, 2006

*Paula Mangini Montonye* and *James H. Moreno*, and *Dwyer & Collora, LLP*, pro hac vice, of the Massachusetts bar, for the petitioner.

*Office of the State's Attorney*, for the respondent.

FUGER, J. The petitioner, Robert Breton, has filed the present petition seeking the issuance of a writ of habeas corpus. In the voluminous amended petition, the petitioner has alleged a multitude of irregularities in his conviction, sentence and appeal. He repeatedly attacks the representation he received from his trial defense counsel.[1] The commissioner of correction, the respondent, has sought access to the files and documents in the possession of the petitioner's prior attorneys as well as an express finding from this court that the petitioner's attorney-client privilege as regards his previous trial defense counsel is implicitly waived.

The court notes that this petitioner is currently under a sentence of death, the execution of which has been stayed, of course, during the pendency of this petition. Although there may be a tendency for some to characterize the present proceeding in this court as a "capital habeas," that is, in a sense, a misnomer. There simply

---

[1] The petitioner was represented by something like eleven attorneys at various stages of the proceedings.

is no *special* category of habeas corpus petition known as "capital habeas." The principles and law that apply in the adjudication of any habeas corpus petition must and shall apply in the present case. To be sure, however, the stakes for the petitioner and the respondent are extraordinarily high; obviously so for the petitioner but for the respondent as well, who may one day be required to carry out a sentence that necessitates putting the petitioner to death in the name of the people of the state of Connecticut. It is, therefore, patently obvious that both sides are committed to investing considerable effort into this case. The court is likewise cognizant of the importance and gravity of these proceedings; nevertheless, the principles applicable in the most trivial of habeas petitions must be applied with equal force in this, one of the most momentous of petitions.

I

DISCUSSION OF LAW

It is crucial at the outset of any habeas petition to understand that there is a critical difference between the legal status of a person who has been *accused* of a crime as opposed to one who has been *convicted* of a crime. Although the person who has been accused of a crime is entitled to a presumption of his or her innocence, the petitioner in a habeas corpus petition (who is, in fact, a *convict*) is not. "It is undoubtedly true that [a] person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt." (Internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 422, 641 A.2d 1356 (1994). "The presumption of innocence, however, does not outlast the judgment of conviction at trial. . . . Thus, in the eyes of the law, [the] petitioner does not come before the Court as one who is [innocent, but, on] the [contrary, as] one who has been convicted by due process of law . . . ." (Citation omitted; internal quotation marks omitted.) Id., 423. Notwithstanding,

many of the protections of the constitution and, in particular, the bill of rights, still apply.

## II

## IMPLIED WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE

The question before the court today is whether a petitioner who files a petition for a writ of habeas corpus alleging ineffective assistance of his or her trial defense counsel waives the attorney-client privilege in respect to the previous counsel whose conduct of the case is under examination. Further, if there is such an implied waiver of this most sacrosanct of privileges, how far does that waiver extend? Surprisingly, given the long history of habeas corpus litigation in the state of Connecticut, that precise question is, to date, unanswered.

The courts of the state of Connecticut have quite appropriately had "a long-standing, strong public policy of protecting attorney-client communications." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 48, 730 A.2d 51 (1999). The prime purpose of the attorney-client privilege is "in large part, to encourage full disclosure by a client to his or her attorney so as to facilitate effective legal representation." Id. Clearly, therefore, "[i]t is important not to weaken the privilege with various exceptions because, as the United States Supreme Court has explained, even the *threat of disclosure* would have a detrimental effect on attorneys' ability to advocate for their clients while preserving their ethical duty of confidentiality." (Emphasis added.) Id. "In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." Id., 52. Anything that derogates the attorney-client privilege

must be closely examined by the court with an eye toward upholding the privilege because "[i]t is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and the attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession . . . ." *Goddard* v. *Gardner*, 28 Conn. 172, 174 (1859).

So, it is clear that the protection of this attorney-client privilege has been a paramount concern in the common law of Connecticut. It would stand to reason, therefore, that these principles are particularly acute when examined in the context of a capital case. It is generally universally accepted that the punishment of death is the ultimate punishment that the state can inflict on an individual. In Connecticut, this concern is clearly manifested in the creation of a special unit of the public defender's office to represent individuals charged with capital felonies. Although criticism may have been legitimately levied against some states of the United States for appointing less than fully qualified counsel to represent capital defendants, that criticism has not been directed toward the state of Connecticut, which appoints only the best and the brightest to capital felony defendants.[2]

In the present case, counsel for the respondent[3] is attempting to gain access to *all* of the files of the peti-

---

[2] Having made this comment, it must be clear that the court clearly recognizes that even the finest of attorneys can make a mistake and that although a counsel may otherwise be a fine attorney, he or she is capable of making a mistake and providing constitutionally inadequate representation in any given case.

[3] The counsel for the respondent is the state's attorney for the judicial district of Waterbury, whose office, incidentally, is responsible for the majority of individuals currently residing on Connecticut's death row.

tioner's trial defense counsel. That means that the particular state's attorney who has been responsible for more death sentences in Connecticut than any other is seeking access to the files of his most zealous opponents to represent properly the respondent in the present case. Understandably, this has generated some opposition from the attorneys who have been "accused"[4] of ineffective representation in the present case and who are now asserting the attorney-client privilege to avoid speaking with counsel for the respondent. The attorney-client privilege belongs to the client, however, not the attorney, although it is incumbent on the attorney to protect that privilege zealously in his or her client's interest.

It has been argued, of course, that the mere act of filing a habeas petition alleging ineffective assistance of counsel constitutes an *implied waiver* of the attorney-client privilege by the petitioner. Notwithstanding, such implied waiver must stand up against the strong public policy in Connecticut respecting the attorney-client privilege. With this in mind, it is clear to this court that the implied waiver "exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 52–53. It is important to keep in mind, however, that in the context of litigation, "[i]t would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while

---

[4] This court hesitates to use the term "accused" in this context. Clearly, this is not a legal malpractice case and is not intended to imply in any way the inadequacy of the counsel who practice in this particular arena. The issue is whether the constitutional standard of adequate representation has been afforded a particular defendant in any given case and because this may be a fluid concept, given the intricacies of a particular case, the finding of ineffective representation in any particular case must never be read as an indictment of the trial defense attorney's overall skill level.

allowing the client to disclose other selected communications solely for self-serving purposes." *Smith* v. *Alyeska Pipeline Service Co.*, 538 F. Sup. 977, 979 (D. Del. 1982). In other words, although a petitioner is free to use the attorney-client privilege as a "shield," it is improper to use it as a "sword" by seeking to deprive an opposing party of material by which that party may defend against the claim raised. "A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. . . . Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived." *Tasby* v. *United States*, 504 F.2d 332, 336 (8th Cir. 1974), cert. denied, 419 U.S. 1125, 95 S. Ct. 811, 42 L. Ed. 2d 826 (1975).

If the invocation of the attorney-client privilege by the petitioner puts the respondent in a disadvantageous position as regards defending the petition for a writ of habeas corpus, then implied waiver of the privilege is obvious. However, "where the party attacking the privilege has not been prejudiced . . . there is no reason to find a waiver by implication." *United States* v. *Aronoff*, 466 F. Sup. 855, 862–63 (S.D.N.Y. 1979). Notwithstanding, it is true that conversely, where there is prejudice, then a waiver may be found.

Here, the petitioner does place the advice of his attorneys into question before this habeas court. In so doing, he impliedly waived his attorney-client privilege such

that his lawyers are free to testify and speak with counsel for the respondent without invoking the former client's attorney-client privilege. Rule 1.6 (d) of the Rules of Professional Conduct provides that "[a] lawyer may reveal such information to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, *or to respond to allegations in any proceeding concerning the lawyer's representation of the client.*" (Emphasis added.) It is true that this rule does not expressly mention habeas corpus proceedings; however, it is clear that the term "any proceeding" is more than broad enough to cover the adjudication of a habeas corpus petition and that the term "allegations" is broad enough to cover a complaint of ineffective assistance of counsel. Consequently, the petitioner's prior counsel are free to discuss their representation with counsel for the respondent without violating the attorney-client privilege and relying on an implied waiver by the petitioner in filing the petition.[5]

That is all the more true in the present case in which the petitioner, in his petition, has placed the advice he

---

[5] "We are met first with the remarkable contention that appellant's rights were infringed upon by reason of the fact that the attorney he charged with failure to represent him adequately at his arraignment and sentencing was called as a witness by the government and permitted by the court to testify in this post-conviction proceeding with respect to the factual issues raised by appellant's motion. Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue." *Laughner* v. *United States*, 373 F.2d 326, 327 (5th Cir. 1967).

received from his lawyers at issue. It has been established for 100 years that when clients waive the privilege by testifying about what transpired between them and their attorney, they cannot thereafter insist that the mouth of the attorney be shut. *Hunt* v. *Blackburn*, 128 U.S. 464, 470, 9 S. Ct. 125, 32 L. Ed. 488 (1888). The implied waiver exception to the attorney-client privilege is invoked "when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship. In those instances, the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 53. The court finds that there is an implied waiver of the attorney-client privilege by the petitioner in the present case.[6]

Notwithstanding the implied waiver concept that this court believes operates to relieve a trial defense counsel in a habeas proceeding who is alleged to have provided ineffective representation of the duty to protect the attorney-client privilege, the question remains as to what limits exist as to the use of that information. The attorney-client privilege is one privilege that is universally recognized by all codes of evidence although, in various jurisdictions, there may be no doctor-patient privilege or no mental health professional-patient privilege.[7] It is the keystone of our Anglo-American jurispru-

---

[6] "It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker* v. *Woodford*, 331 F.3d 715, 716 (9th Cir.), cert. denied, 540 U.S. 1013, 124 S. Ct. 536, 157 L. Ed. 2d 424 (2003).

[7] "The rule that a client waives his privilege by attacking the attorney's performance of his duties seems to have been adopted unanimously by those courts which have dealt with the question." *Laughner* v. *United States*, 373 F.2d 326, 327 n.1 (5th Cir. 1967).

dence. It is, therefore, of paramount importance and deserves protection even under the circumstances posed in the present case. Consequently, this court finds that a habeas petitioner may, if he or she so wishes, reassert an attorney-client privilege even in the face of the implied waiver brought about by the filing of the habeas petition. It is not, however, without cost.

As previously noted, when the petitioner who has alleged unprofessional conduct on the part of his former trial defense counsel testifies, or otherwise introduces evidence to establish the same, then a reinvocation of the attorney-client privilege operates to place the respondent in an untenable position. The law allows the privilege to be a shield but not a sword. "[T]he holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition. Cf. *Lyons* v. *Johnson*, 415 F.2d 540, 541–42 (9th Cir. 1969) (affirming dismissal of plaintiff's complaint after she persisted in hiding behind the privilege against self-incrimination by refusing to answer any deposition questions or to submit to discovery) [cert. denied, 397 U.S. 1027, 90 S. Ct. 1273, 25 L. Ed. 2d 538 (1970)]." *Bittaker* v. *Woodford*, 331 F.3d 715, 721 (9th Cir.), cert. denied, 540 U.S. 1013, 124 S. Ct. 536, 157 L. Ed. 2d 424 (2003).

To allow the petitioner to reassert the attorney-client privilege, it will be necessary for the habeas court to dismiss those portions of the petition alleging ineffective assistance of counsel with prejudice. The choice as to which of these courses is to be followed rests with the petitioner. The petitioner may either waive the attorney-client privilege and proceed with the trial of the petition or the petitioner may assert the attorney-client privilege and face dismissal with prejudice of

those portions of the petition alleging ineffective assistance of trial defense counsel.[8]

## III

## CONCLUSION

To summarize, then, this habeas court finds that a reasonable interpretation of the case law in the state of Connecticut regarding this issue is that (1) there is an implied waiver of the attorney-client privilege between the petitioner and former trial defense counsel that becomes effective when an inmate files a habeas petition alleging ineffective assistance of his or her former trial defense counsel; (2) former trial defense counsel may engage in pretrial cooperation with counsel for the respondent to assist in defending such a claim; (3) former trial defense counsel may answer questions and reveal confidential communications from the petitioner to defend against claims contained within the habeas petition; and, (4) the petitioner may reassert the attorney-client privilege at any time, in whole or in part; however, such reassertion of the privilege will necessitate the habeas court dismissing with prejudice those portions of the habeas petition that allege ineffective assistance of counsel to which reassertion of the privilege would be germane.

---

[8] "[T]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege. . . . The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bittaker* v. *Woodford*, supra, 331 F.3d 720.