Neel, Stephen E., J.
Plaintiffs, both former in-house counsel to defendants (collectively, FMC), move to compel production of documents which FMC has withheld and listed on a privilege log as attorney-client privileged or work product. Plaintiffs seek such documents in support of their claims for breach of contract for compensation, including payment of special bonuses which they allege FMC owes for the successful completion of what was called the OIG Investigation, and for stock option rights.
The Court considers below the law of attorney-client privilege as it applies to this case, and then addresses the specific categories of documents, listed in the privilege log, which plaintiffs seek, together with the parties’ contentions as to each category.
I. The Law of Attorney-Client Privilege as Applied to this Case
The general features of the attorney-client privilege are well known: the attorney-client privilege shields from the view of third parties all confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice. See, e.g., Matter of John Doe Grand Jury Investigation, 408 Mass. 480, 481 (1990), quoting Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888) (“seal of secrecy” on confidential communications between client and counsel); Foster v. Hall, 29 Mass. 89, 12 Pick. 89, 93 (1831) (“the general rule [is] that [where] matters [are] communicated by a client to his attorney, in professional confidence, the attorney shall not be at any time afterwards called upon or permitted to disclose in testimony”) . . .
Suffolk Const. Co., Inc. v. Division of Capital Asset Management, 449 Mass. 444, 448-49 (2007). The attorney’s confidential advice to the client is also protected. Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).
“The existence of the privilege and the applicability of any exception ... is a question of fact for the judge.” Matter of Reorganization of Elec. Mut. Liability Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421 (1997). The party asserting the privilege has the burden of proving that the attorney-client privilege applies.
This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including: (1) the communications were received from a client during the course of the client’s search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived.

Id,

One preliminary issue in this case is whether FMC may withhold, as privileged, documents which plaintiffs themselves either authored or received while in FMC’s employ. That is a different question from whether plaintiffs may use those or other privileged documents at trial, or otherwise disclose them, or the information they contain, in support of their claims against their former employer and client.
The parties have focused primarily on the latter issue, citing GTE Products Corp. v. Stewart, 421 Mass. 22 (1995) (GTE II). In that case, involving former in-house counsel’s claim of wrongful discharge, the court discussed the limited manner and extent to which the claim of an attorney against his former client “can be proved without any violation of the attorney’s obligation to respect client confidences and secrets ...” (emphasis supplied), at least under the Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, as in effect at the time. Defendants here assert that GTE II, which held that an attorney’s wrongful discharge claim could go forward only if “the claim can be proved without any violation of’ the privilege, requires denial of plaintiffs’ motion here. Plaintiffs argue that the adoption of Rule 1.6 of the Massachusetts Rules of Professional Conduct “overrules” GTE II, Plaintiffs’ Reply at 8, insofar as Rule 1.6 *590 provides that “[a] lawyer may reveal [otherwise privileged] information: ... (2) to the extent the lawyer reasonably believes necessaiy to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client.” Defendants counter that both GTE II and the commentary to Rule 1.6 limit the rule’s application.
Whatever the implications of Rule 1.6 for the scope of discovery of attorney confidences, the Court at this stage of this case will apply more traditional notions of permissible discovery of such confidences, beginning with the preliminary issue, noted above, regarding whether defendants must produce documents which plaintiffs authored or received while in FMC’s employ.[1]
Interestingly, the Supreme Judicial Court considered the issue of discovery of privileged documents to former counsel at an early stage of the GTE litigation. GTE Products Corp. v. Stewart, 414 Mass. 721 (1993) (GTE I). Stewart, upon leaving his employment, had taken “certain documents containing privileged and confidential information.” GTE I, at 723. GTE sought an injunction requiring Stewart to return the documents, which he had shared with his attorney. The court rejected GTE’s argument:
GTE’s main claim is that allowing Stewart to retain the documents gives Stewart a litigational advantage that a suppression order would not cure. GTE states that, even if the judge refused to admit the documents as evidence, it has been injured because Stewart’s attorneys in the wrongful discharge case may use the privileged communications to identify witnesses to depose and to learn additional facts about the case. GTE does not cite any cases supporting this proposition. The inference drawn from GTE’s claim is that it has a right to a long and expensive discovery procedure and that allowing Stewart to bypass that process gives him a litigatio-nal advantage. “The conduct and scope of discovery is within the sound discretion of the judge.” Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 799 (1987). We reject the claim that there is a right to compel long and expensive discovery and that loss of that litigational advantage is an irreparable injury.
Id., at 725. The court, noting that the motion judge prohibited “any further disclosure of the documents, thereby eliminating any chance of harm to GTE from public disclosure," concluded that “GTE has not shown that allowing Stewart simply to retain the documents until either the hearing on the merits or a pretrial motion challenging the use of any document or requesting that a deposition not take place would create any irreparable harm.” Id., at 724-25.
GTE apparently made no claim that its former counsel’s possession of GTE’s privileged documents was somehow prohibited by the attorney-client privilege. Nevertheless, the court’s discussion highlights the distinction between (1) disclosure to a former attorney (through discovery or otherwise) of privileged documents which that attorney had previously authored or received, enabling the attorney to “identify witnesses to depose and to learn additional facts about the case,” id. at 725, and (2) the attorney’s use of those or other privileged documents to prove his or her claims in the case, or any other use which would require disclosure of the documents or privileged information therein.[2]
The foregoing, and the lack of any contrary authority presented by either party to this case, persuade the Court that, where former in-house counsel sues his or her former employer, the attorney-client privilege is not violated when the employer is required to produce to the plaintiff privileged documents which the plaintiff either authored or received while acting as in-house counsel. Accordingly, FMC shall produce any such documents to plaintiffs, subject to an appropriate confidentiality order.
A further question is whether and under what circumstances the plaintiffs may disclose such documents to their attorneys in this case. GTE I suggests, and the Court concludes, that disclosure by the plaintiff to his or her own attorney is permitted, if for no other reason than to allow the plaintiff to obtain independent legal advice as to whether and how to seek to use such documents in this litigation, consistent with Rule 1.6. Plaintiffs counsel would of course be subject to the same confidentiality order.
In addition to attorney-client privilege, defendants also claim the protection of Rule 26(b)(3) for work product, i.e., materials “prepared in anticipation of litigation or for trial by or for” a party.[3]
II. Specific Categories of Documents Listed in the Privilege Log
Documents sought by plaintiffs, and not produced in accordance with the above, shall be dealt with as follows.
1. “Communications Between Non-Attorneys”
Plaintiffs argue that communications between non-attorneys — for example, emails among corporate officers concerning plaintiffs — are not privileged. Defendants argue that documents which “memorialize or transmit communications from FMC’s attorneys,” Opposition at 10, are protected. The Court agrees with defendants, with the following qualifications. Defendants may not withhold any document listed in the privilege log (or any portions of such document) which is a communication between or among non-attorneys only, and which does not memorialize or transmit confidential communications between FMC and its attorney constituting, or undertaken for the purpose of obtaining, legal advice. As to listed documents which FMC contends do memorialize or transmit such confidential communications, FMC shall supplement the log to identify the attorney or attorneys whose *591 communications are memorialized or transmitted, the subject of such advice, and the reason why the sender(s) or recipient(s) of the document were privy to such communications.
2.“Communications to Foreign In-House Counsel”
Plaintiffs argue that documents constituting communications with FMC’s German in-house counsel, R. Runte, did not concern legal advice and are not privileged. To the extent that such communications do not contain confidential communications between FMC and its attorney undertaken for the purpose of obtaining or conveying legal advice (e.g., communications to or from Runte in his business or administrative, rather than legal, capacity), they may not be withheld.[4]
3. “Documents in Which an Attorney Is Only ‘Copied’ ”
Routine distribution of non-privileged information to in-house counsel does not render such information privileged. See F.C. Cycles, Int'l, Inc. v. Fila Sport, S.p.A., 184 F.R.D. 64, 71 (D.Md. 1998). On the other hand, a confidential communication sent to an attorney for the purpose of obtaining legal advice is privileged. FMC, and its attorneys, are charged with making such distinctions in good faith and reflecting those good faith determinations in their production and privilege log. With regard to any withheld document as to which an attorney is only “copied,” FMC and its counsel shall state, in the privilege log, that such document was sent to the attorney not simply as a matter of routine but specifically for the purpose of obtaining or conveying legal advice, and was not otherwise disclosed so as to waive the privilege.
4. “Documents in Which No Legal Advice Is Being Sought”
The one document identified by plaintiff is FMC0468-479, which FMC states is a draft of the Grieco Separation Agreement. To the extent that documents constitute confidential drafts of operative documents by attorneys, they are privileged.
5.“Documents in Which In-House Counsel Was Acting as a Business Agent”
The requirements set forth in sections 2 and 3 above shall apply to this categoiy of documents.
6.“Documents Where the Privilege Has Already Been Waived”
Plaintiffs seek PowerPoint presentations by in-house counsel to FMC’s directors regarding the status of the OIG Investigation and legal strategy, arguing that FMC has already produced PowerPoint and other documents “covering similar sensitive legal information about the OIG Investigation” and also prepared for the Board. Plaintiffs’ Reply, at 7. Defendants argue that “each PowerPoint presentation must be individually examined to determine whether it contains protected materials.” Defendants’ Opposition, at 16.
A party’s voluntary disclosure of documents which are otherwise protected by the attorney-client privilege waives the privilege as to any other communications pertaining to the same subject matter. See Neitlich v. Peterson, 15 Mass.App.Ct. 622, 626 (1983) (adopting the view that, where the disclosure is by testimony, “the privilege is waived only as to the subject matter of the testimony given by the witness”). Cf. Darius v. City of Boston, 433 Mass. 274, 283 (2001) (“An ‘at issue’ waiver [i.e., claims placed at issue in a lawsuit] . . . should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case. By definition, it is a limited waiver of the privilege with respect to what has been put ‘at issue.’ ”).
Thus, defendants must demonstrate that the subject of the withheld PowerPoint materials is different from that of the PowerPoint materials they have produced. Defendants shall either produce the withheld materials, or state in the privilege log, with specificity as to each document withheld, the subject matter of the document, and the precise manner in which such subject matter is different from the subject matter of the materials which plaintiffs have identified as similar. Upon receipt of defendants’ revised privilege log, plaintiffs may renew their motion if they are not satisfied that the subject matter of the withheld documents is different.
7.“Hot Docs”
Plaintiffs list five documents which are identified on the privilege log as “hot doc[s],” and infer that such documents are “relevant, discoverable, explosive, and/or damaging to the defendants’ position.” Motion, at 8. Defendants argue that four of the five “are all communications to or from an FMC attorney and contain advice that FMC received or sought regarding the central legal issue in this case: whether Grieco and McGinty’s contracts entitle them to a ‘special bonus.’ ” Opposition, at 16. The Court is satisfied that those four are properly withheld.
The fifth document (FMC3099-3117) “was provided to McGinty while she was still in charge of mánaging FMC’s response to the OIG Investigation and it outlines the risks that FMC faces if it does not settle with the government. The document is clearly privileged, but not as to McGiniy, who as in-house counsel received it. In accordance with the Court’s order above regarding such documents, that document shall be produced to plaintiff and her counsel.
8.“Documents Central to Proving a Special Bonus Is Owed or Stock Rights Granted”
Documents do not lose the protection of the attorney-client privilege because they are particularly relevant or probative. To the extent that any such documents are work product, plaintiffs have failed to establish, under Rule 26(b)(3), substantial need and an inability, without undue hardship, to obtain the substantial equivalent of such documents. Accord *592 ingly, as to any such documents withheld as work product, the motion is denied without prejudice.
ORDER
Plaintiffs’ Motion to Compel Production of Documents Identified on Defendant’s Privilege Log is ALLOWED IN PART and DENIED IN PART, as specified above. It is further ORDERED that FMC shall revise its privilege log to specify, as to each document listed, the privilege or protection claimed.

The parties’ analysis of the additional materials to be produced pursuant to this memorandum and order may allow them to present a more complete record upon which both they and the Court can consider more precisely the effect of Rule 1.6 on what additional privileged documents, if any, should be produced.

The second issue is illustrated in GTE 17. “Stewart retained copies of certain documents, papers, and materials after he left GTE’s employment. Descriptions of the products at issue, and legal advice given concerning them, are contained in memoranda, some written by Stewart and some by outside counsel. Copies of some of these documents were attached to Stewart’s opposition to GTE’s motion for summary judgment. Among the attachments are copies of documents marked ‘privileged and confidential.’ GTE has not waived its attorney-client privilege against disclosure of the material retained by Stewart. At GTE’s request, and by order of a judge in the Superior Court, ‘the action has proceeded under seal.’ [Citing GTE I at 723.] Our recitation of the facts respects GTE’s interest in the confidentiality of what is undoubtedly privileged material.” GTE II, at 24, n.4.

Most of the parties’s contentions revolve around attorney-client privilege. To the extent that the Court determines that certain types of documents (or portions thereof! are not subject to the privilege, and therefore may not be withheld on that basis, such documents or portions shall be produced unless they constitute work product.

The Court does not understand plaintiff to be arguing that the attorney-client privilege does not apply where the attorney is not licensed to practice law in the United States; to the extent that such is the argument, plaintiff cites no authority, and the Court rejects it.