No. 13-0733 - State of West Virginia ex rel. State of West Virginia v. The Honorable Robert A. Burnside, Jr., Judge of the Circuit Court of Raleigh County; and Richard E. Hardison, Jr.

**FILED**

**April 17, 2014**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring:

As suggested by the majority, the notion that West Virginia Code § 62-1D-9(d) permits an alleged drug dealer to use a law office as an impenetrable sanctuary for drug trafficking and trade is absurd. I agree that West Virginia Code § 62-1D-9(d) is intended to prevent the interception or monitoring of attorney-client privileged communications through wiretapping or electronic surveillance and that the case at bar does not involve such privileged communications. Rather, in this case, a member of the West Virginia bar, who allegedly utilized his law office like a common street corner for drug trade, seeks to cloak it with the inviolable protection afforded to the citizens of this State when engaged in privileged discussions with their lawyer.

Sadly, the parasitic effects of drug addiction infiltrate every aspect of society. Indeed, cocaine addiction in particular leaves a path of destruction in its wake, causing violence and crime across our nation, including West Virginia. Every day, this Court confronts the devastating effects of cocaine addiction in cases involving drug-addicted parents who physically and sexually abuse their children or who allow others to do so; infants who are suffering from harmful, prenatal exposure to cocaine; and persons who have committed robberies, burglaries, malicious assaults, murders, and countless other crimes

either seeking to sustain their cocaine addiction or acting while under the influence of cocaine. The use of this dangerously addictive drug destroys families, leads to the loss of employment, and results in the overcrowding of our prison system. There is simply no aspect of society that escapes the catastrophic effects of this insidious drug.

That said, irrespective of the nobility of the cause underlying the legal issues presented in this case, I firmly believe that attorney-client communications must be jealously guarded and do not lightly disregard these concerns, even in the egregious fact pattern presented herein. It has been observed that

> [t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn, supra*, at 389, 101 S.Ct. at 682.

*Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998). However, the United States Supreme Court has recognized that, in certain circumstances, the privilege "ceases to operate" as a safeguard on "the proper functioning of our adversary system." *U.S. v. Zolin*, 491 U.S. 554, 562 (1989).

2

In this case, while I firmly support the staunch preservation of the attorney-client privilege, West Virginia Code § 62-1D-9(d) cannot reasonably be read to elevate communications made by a lawyer in the course of his alleged criminal enterprise to those sacrosanct communications between an attorney and his/her client simply because a crime may have been committed in a law office.

For these reasons, I concur.